dotloop signature verification: dtlp.us/2SFw-Pd7x-jMkQ



# EXHIBIT "A"

# CONSUMER NOTICE
### THIS IS NOT A CONTRACT

CN

In an effort to enable consumers of real estate services to make informed decisions about the business relationships they may have with real estate brokers and salespersons (licensees), the Real Estate Licensing and Registration Act (RELRA) requires that consumers be provided with this Notice at the initial interview.

• Licensees may enter into the following agency relationships with consumers:

*Seller Agent*

As a seller agent the licensee and the licensee's company works exclusively for the seller/landlord and must act in the seller's/landlord's best interest, including making a continuous and good faith effort to find a buyer/tenant except while the property is subject to an existing agreement. All confidential information relayed by the seller/landlord must be kept confidential except that a licensee must reveal known material defects about the property. A subagent has the same duties and obligations as the seller agent.

*Buyer Agent*

As a buyer agent, the licensee and the licensee's company work exclusively for the buyer/tenant even if paid by the seller/landlord. The buyer agent must act in the buyer/tenant's best interest, including making a continuous and good faith effort to find a property for the buyer/tenant, except while the buyer is subject to an existing contract, and must keep all confidential information, other than known material defects about the property, confidential.

*Dual Agent*

As a dual agent, the licensee works for *both* the seller/landlord and the buyer/tenant. A dual agent may not take any action that is adverse or detrimental to either party but must disclose known material defects about the property. A licensee must have the written consent of both parties before acting as a dual agent.

*Designated Agent*

As a designated agent, the broker of the selected real estate company designates certain licensees within the company to act exclusively as the seller/landlord agent and other licensees within the company to act exclusively as the buyer/tenant agent in the transaction. Because the broker supervises all of the licensees, the broker automatically serves as a dual agent. Each of the designated licensees are required to act in the applicable capacity explained previously. Additionally, the broker has the duty to take reasonable steps to assure that confidential information is not disclosed within the company.

• In addition, a licensee may serve as a Transaction Licensee.

A transaction licensee provides real estate services without having any agency relationship with a consumer. Although a transaction licensee has no duty of loyalty or confidentiality, a transaction licensee is prohibited from disclosing that:

• The seller will accept a price less than the asking/listing price,

• The buyer will pay a price greater than the price submitted in the written offer, and

• The seller or buyer will agree to financing terms other than those offered.

Like licensees in agency relationships, transaction licensees must disclose known material defects about the property.

CLIENT CREEN COMPLIANCE WHITE BROKER OEM

dotloop signature verification

- Regardless of the business relationship selected, all licensees owe consumers the duty to:

  - Exercise reasonable professional skill and care which meets the practice standards required by the RELRA.

  - Deal honestly and in good faith.

  - Present, as soon as practicable, all written offers, counteroffers, notices and communications to and from the parties. This duty may be waived by the seller where the seller's property is under contract and the waiver is in writing.

  - Comply with the Real Estate Seller Disclosure Law.

  - Account for escrow and deposit funds.

  - Disclose, as soon as practicable, all conflicts of interest and financial interests.

  - Provide assistance with document preparation and advise the consumer regarding compliance with laws pertaining to real estate transactions.

  - Advise the consumer to seek expert advice on matters about the transaction that are beyond the licensee's expertise.

  - Keep the consumer informed about the transaction and the tasks to be completed.

  - Disclose financial interest in a service, such as financial, title transfer and preparation services, insurance, construction, repair or inspection, at the time service is recommended or the first time the licensee learns that the service will be used.

- The following contractual terms are *negotiable* between the licensee and the consumer and must be addressed in an agreement/disclosure statement:

  - The duration of the licensee's employment, listing agreement or contract.

  - The licensee's fees or commission.

  - The scope of the licensee's activities or practices.

  - The broker's cooperation with and sharing of fees with other brokers.

- All sales agreements must contain the property's zoning classification except where the property is zoned solely or primarily to permit single family dwellings.

- The Real Estate Recovery Fund exists to reimburse any person who has obtained a final civil judgment against a Pennsylvania real estate licensee owing to fraud, misrepresentation, or deceit in a real estate transaction and who has been unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-3658.

**Before you disclose any financial information to a licensee, be advised that unless you select a business relationship by signing a written agreement, the licensee is NOT representing you. A business relationship is NOT presumed.**

## ACKNOWLEDGMENT

I acknowledge that I have received this disclosure.

Date: 4/28/19      Angel L. Velazquez Jr _____   _____
                        **(Consumer's Printed Name)**          **(Consumer's Signature)**

Date: _____   _____   _____
                        **(Consumer's Printed Name)**          **(Consumer's Signature)**

I certify that I have provided this document to the above consumer during the initial interview.

Date: _____
_____   _____   RS330774
**(Licensee's Printed Name)**   **(Licensee's Signature)**   **(License #)**

*Adopted by the State Real Estate Commission at 49 Pa. Code §35.336.*

dotloop signature verification.

**BAC**

## BUYER (TENANT) AGENCY CONTRACT

This form recommended and approved for but not intended to use by the members of the Pennsylvania Association of Realtors® (PAR)

*Note: The terms "buyer," "seller," "agreement of sale," and "purchase" also will be construed to mean "tenant," "landlord," "lease," and "rent," respectively, throughout this agreement.*

| | |
|---|---|
| Broker (Company) Keller Williams Real Estate | Licensee(s) (Name) Tracey Langan |
| | State License # Rs330794 |
| Company License # RB065551 | Direct Phone(s) |
| Company Address  584 Middletown Blvd, Suite A-50 | Cell Phone(s) 215 499-6201 |
| Langhorne, PA 19047 | Licensee Fax 215-702-0200 |
| Company Phone  215-757-6100 | Email traceylangan@kw.com |

**BUYER**  Angel L. Velazquez Jr

**BUYER'S MAILING ADDRESS**

**PHONE** _____    **FAX** _____

**E-MAIL** viper3636@verizon.net

**Buyer understands that this Buyer Agency Contract is between Broker and Buyer.**

**Does Buyer have a Buyer Agency Contract with another Broker?**  ☐ Yes  ☑ No

If yes, explain: _____

1. **STARTING & ENDING DATES OF BUYER AGENCY CONTRACT (ALSO CALLED "TERM")**
   (A) No Association of REALTORS® has set or recommended the term of this Contract. Broker/Licensee and Buyer have discussed and agreed upon the length or term of this Contract. Broker may be paid a fee that is a percentage of the purchase price. Even though Broker's Fee, or a portion of it, may be paid by seller or listing broker, Broker will continue to represent the interests of Buyer.
   (B) **This Contract applies to any property that Buyer chooses to purchase during the term of this Contract. Buyer will not enter into a Buyer Agency Contract with another broker/licensee that begins before the Ending Date of this Contract.**
      **Starting Date:** This Contract starts when signed by Buyer and Broker, unless otherwise stated here: 4-28-19 _____
      **Ending Date:** This Contract ends at 11:59 PM on 10/31/2019 _____, or before if Buyer and Broker agree. The Ending Date of this Contract may not be extended without the written consent of Buyer.
   (C) If Buyer is negotiating or has entered into an Agreement of Sale, this Contract ends upon settlement.
2. **BROKER'S FEE**
   (A) No Association of REALTORS® has set or recommended Broker's fee. Broker and Buyer have negotiated the fee Broker will receive for exercising professional knowledge and skills in locating and assisting Buyer in the acquisition of real property which is available and suitable for Buyer.
   (B) Broker's Fee, paid by Buyer to Broker, is as follows:
      1. In a purchase transaction:
         a. with a seller represented by a real estate broker the fee is 2.5 % of the purchase price OR $ _____ whichever is greater, AND $ 325.00 165 00.
         b. with a seller who is **not** represented by a real estate broker the fee is 2.5 % of the purchase price OR $ _____, whichever is greater, AND $ 325.00 165 00.
      2. Broker's Fee in event of a lease transaction is: n/a
      3. It is Broker's policy to accept compensation offered by the listing broker. If the amount received from the listing broker is less than the amount in Paragraph 2(B)1, in a purchase transaction, or 2(B)2, in a lease transaction, Buyer will pay Broker the difference, unless seller agrees to pay the difference as a term in the agreement of sale.
      4. $ N/a _____ of Broker's Fee is earned and due (non-refundable) at signing of this Buyer Agency Contract.
      5. Other
   (C) **The balance of Broker's Fee is earned if Buyer enters into an agreement of sale during the term of this Contract, whether brought about by Broker, Broker's Licensee(s) or by any other person, including Buyer. If Buyer defaults on the terms of an agreement of sale, Broker's Fee will be paid by Buyer to Broker at that time. Buyer is advised that contacting a listing broker or seller directly may compromise Broker's ability to earn compensation from a listing broker and could result in Buyer's obligation to pay a fee to Broker.**
   (D) If Buyer enters into an agreement of sale for a property after the Ending Date of this Contract, Buyer will pay Broker's Fee if:
      1. The agreement of sale is a result of Broker's actions during the term of this Contract, OR
      2. The property was seen during the term of this Contract, AND
      3. Buyer is not under an exclusive buyer agency contract with another broker at the time Buyer enters into an agreement of sale.
3. **DUAL AGENCY**
   Buyer agrees that Broker and Broker's Licensee(s) stated above may also represent the seller(s) of the property Buyer might buy. A

**Buyer Initials:**                     **BAC Page 1 of 3**                    **Broker/Licensee Initials:** 

Pennsylvania Association of Realtors®

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2019
Rev 1/13 06 4/15

Broker is a Dual Agent when a Broker represents both Buyer and a seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents Buyer and a seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Buyer and a seller. If the same Licensee is designated for Buyer and a seller, the Licensee is a Dual Agent. Buyer understands that Broker is a Dual Agent when Buyer is viewing properties listed by Broker.

**4.  DESIGNATED AGENCY**

Designated Agency is applicable, unless checked below. Broker designates the Licensee(s) stated above to exclusively represent the interests of Buyer. If Licensee is also the Seller's Agent, then Licensee is a DUAL AGENT.

☐  **Designated Agency is not applicable.**

**5.  BROKER'S SERVICES TO OTHERS**

(A)  Broker may not take action that is inconsistent with Buyer's interests. However, Broker may provide services to a seller for which Broker may accept a fee. Such services may include, but are not limited to, listing property for sale; representing the Seller as Seller Agent; deed/document preparation; ordering certifications required for closing; financial services; title transfer and preparation services; ordering insurance, construction, repair, or inspection services. Providing such services is not in itself a breach of Broker's fiduciary duty to Buyer.

(B)  Broker/Licensee may show the same properties to other buyers and may represent those buyers in attempts to purchase the same property that Buyer wishes to purchase. Broker does not breach a duty to Buyer by showing a property Buyer is interested in to other prospective buyers.

(C)  It is a conflict of interest when Broker or Licensee has a financial or personal interest in the property and/or cannot put Buyer's interests before any other. If Broker, or any of Broker's licensees, has a conflict of interest, Broker will notify Buyer in a timely manner.

**6.  ENTIRE CONTRACT**

This Contract is the entire agreement between Broker and Buyer. Any verbal or written agreements that were made before are not a part of this Contract. All changes to this Contract must be in writing and signed by Broker and Buyer.

**7.  TRANSFER OF THIS CONTRACT**

(A)  Buyer agrees that Broker may transfer this Contract to another broker when Broker stops doing business, Broker forms a new real estate business, OR Broker joins his business with another.

(B)  Broker will notify Buyer immediately in writing if Broker transfers this Contract to another broker. Buyer will follow all requirements of this Contract with the new broker.

**8.  CONFIDENTIALITY**

Unless permitted by Buyer or required by law, Broker will not knowingly reveal or use any confidential information of Buyer. Buyer understands that sellers or sellers' representatives might not treat the existence, terms or conditions of any offer as confidential unless there is a confidentiality agreement between Buyer and the seller. This Paragraph will survive the termination or expiration of this Contract.

**9.  EXPERTISE OF REAL ESTATE AGENTS**

Pennsylvania real estate agents are required to be licensed by the Commonwealth of Pennsylvania and are obligated to disclose adverse factors about a property that are reasonably apparent to someone with expertise in the marketing of real property.

(A)  If Buyer wants information regarding specific conditions or components of a property which are outside Broker's or Licensee's area of expertise, Buyer is encouraged to seek the advice of an appropriate professional.

(B)  If Buyer wants financial, legal, or any other advice, Buyer is encouraged to seek the services of an accountant, lawyer, or other appropriate professional.

**10. DEPOSIT MONEY**

(A)  Broker will keep (or will give to the listing broker, who will keep) all deposit monies that Broker/Licensee receives in an escrow account as required by the real estate licensing laws and regulations until the sale is completed or an agreement of sale is terminated, or the terms of a prior written agreement between the Buyer and a seller have been met. Buyer and Seller may name a non-licensee as the escrow holder, in which case the escrow holder will be bound by the terms of the escrow agreement, not by the Real Estate Licensing and Registration Act. Buyer agrees that the person keeping the deposit monies may wait to deposit any uncashed check that is provided as deposit money until Seller has accepted an offer.

(B)  Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:

1.  If an agreement of sale is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written agreement signed by both parties is evidence that there is no dispute regarding deposit monies.

2.  If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing Broker how to distribute some or all of the deposit monies.

3.  According to the terms of a final order of court.

4.  According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the deposit monies if there is a dispute between the parties that is not resolved.

(C)  Buyer agrees that if Buyer names Broker or Broker's licensee(s) in litigation regarding deposit monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by Buyer.

**Buyer Initials:** _____          **BAC Page 2 of 3**          **Broker/Licensee Initials:** _____

dotloop signature verification. _____

**11. CIVIL RIGHTS ACTS**
Federal and state laws make it illegal for a seller, broker, or anyone to use RACE, COLOR, RELIGION or RELIGIOUS CREED, SEX, DIS-ABILITY (physical or mental), FAMILIAL STATUS (children under 18 years of age), AGE (40 or older), NATIONAL ORIGIN, USE OR HANDLING/TRAINING OF SUPPORT OR GUIDE ANIMALS, or the FACT OF RELATIONSHIP OR ASSOCIATION TO AN INDI-VIDUAL KNOWN TO HAVE A DISABILITY as reasons for refusing to sell, show, or rent properties, loan money, or set deposit amounts, or as reasons for any decision relating to the sale or rental of property

**12. NOTICE REGARDING CONVICTED SEX OFFENDERS (MEGAN'S LAW)**
The Pennsylvania General Assembly has passed legislation (often referred to as "Megan's Law," 42 Pa C.S. §9791 et seq.) providing for community notification of certain convicted sex offenders. Buyers are encouraged to contact the municipal police department or the Pennsylvania State Police for information relating to the presence of sex offenders near a particular property, or to check the infor-mation on the Pennsylvania State Police Web site at www.pameganslaw.state.pa.us

**13. BUYER INSPECTIONS**
(A) Unless Buyer and a seller agree otherwise, real estate is sold **IN ITS PRESENT CONDITION.** It is Buyer's responsibility to determine whether the condition of the property is satisfactory. **Buyer is advised to carry out an inspection,** at Buyer's expense, by qualified professionals to determine the condition of the structure or its components. Areas of concern may include, but are not limited to: electrical; plumbing; heating, ventilating and air conditioning; appliances and fixtures; water infiltration; basement; roof; property boundaries; asbestos, mold and indoor air quality, carbon monoxide, radon, and environmental hazards or sub-stances; wood-destroying insect infestation; on-site water service and/or sewage system; property insurance; deeds, restrictions and zoning; and lead-based paint. Buyer should discuss inspections and any special needs with Licensee.

(B) Buyer is advised that information regarding properties considered for purchase by Buyer has been provided by a seller or a seller's broker. Such information may include, but is not limited to, the information on the Seller's Property Disclosure Statement, includ-ing environmental conditions; MLS information, including information regarding restrictions, taxes, assessments, association fees, zoning restrictions, dimensions, boundaries (if identified); and marketing information. Unless otherwise noted, Broker has not ver-ified the accuracy of this information, and Buyer is advised to investigate its accuracy.

**14. RECOVERY FUND**
Pennsylvania has a Real Estate Recovery Fund (the Fund) to repay any person who has received a final court ruling (civil judgment) against a Pennsylvania real estate licensee because of fraud, misrepresentation, or deceit in a real estate transaction. The Fund repays persons who have not been able to collect the judgment after trying all lawful ways to do so. For complete details about the Fund, call (717) 783-3658.

**15. SPECIAL CLAUSES**
A. **The following are part of this Buyer Agency Contract if checked:**
☐ Single Agency Addendum (PAR Form SA)
☐ _____
☐ _____

B. **Additional Terms:**
_____

Buyer has read and received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.

Buyer has read the entire Contract before signing. Buyer must sign this Contract.

If Buyer is obtaining mortgage financing, Buyer shall promptly deliver to Broker a copy of all Loan Estimate(s) and Closing Disclosure(s) upon receipt. Buyer gives permission for Broker to send information about this transaction to Buyer's fax number(s) and/or e-mail address(es) listed.

Return of this Contract, and any addenda and amendments, including return by electronic transmission, bearing the signatures of all parties, constitutes acceptance by the parties.

This Contract may be executed in one or more counterparts, each of which shall be deemed to be an original and which counter-parts together shall constitute one and the same Agreement of the Parties.

NOTICE BEFORE SIGNING: IF BUYER HAS LEGAL QUESTIONS, BUYER IS ADVISED TO CONSULT A PENNSYLVANIA REAL ESTATE ATTORNEY.

BUYER _____  DATE _4/28/19_

BUYER _____  DATE _____

BUYER _____  DATE _____

BROKER (COMPANY) _Keller Williams_

ACCEPTED ON BEHALF OF BROKER BY _____  DATE _4/28/19_

BAC Page 3 of 3

dotloop signature verification

## AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE for BUYERS   rev. 7/2018

BUYER(S): Angel L. Velazquez Jr _____   AGENT: _Tracey Luxpen_

**Disclosure of Business Relationship:** This is to give you notice that some owners and agents at Keller Williams Real Estate have a business relationship with certain providers of services related to your purchase, sale or refinance of real estate. Because of this relationship, this referral may provide some owners and agents at Keller Williams Real Estate a financial or other benefit.

Set forth is the charge or range of charges for the settlement services listed.  You are NOT required to use any of the listed providers as a condition for your purchase, sale or refinance of subject property.  THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES.  YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THOSE SERVICES.  The name of the providers and the nature of the relationship are as follows:

**Bucks County Abstract Services, LLC & First Partners Abstract Company, Conveyancing Departments:**
Bucks County Abstract Services, LLC & First Partners Abstract Company provide Title Insurance services.  The ownership of Bucks County Abstract Services, LLC is split among the owners and many of the agents of Keller Williams Real Estate which may include your Real Estate agent.  Buyer acknowledges that the owners and agents, because of this relationship, may receive a financial or other benefit.  Set forth below is the estimated charges or range of charges by Bucks County Abstract Services, LLC & First Partners Abstract Company for their title services:
1) Basic Title Insurance: see Buyer's Settlement Cost sheet
2) Enhanced Title Insurance Policy: is available, ask your agent
3) Title Insurance Endorsements to the lenders: $150 to $250 depending on type of mortgage obtained by Buyer.
4) Closing Service Letter (if requested by lender): $75.
5) Notary Fees: approximately $40.
6) Recording Fees and Services: approximately $300 depending upon the county.

☑ Buyer(s) **SELECT** Bucks County Abstract Services, LLC or First Partners Abstract Company to provide Title services.

☐ Buyers(s) **DO NOT SELECT** Bucks County Abstract Services, LLC or First Partner Abstract Company to provide Title Services.

Buyer further acknowledges that a representative from Bucks County Abstract Services, LLC or First Partners Abstract Company will contact Buyer for Social Security number(s) as required for the Domestic Relations Act and Patriots Act Searches.

**Centennial Lending Group, LLC & Summit Mortgage Corporation (mortgage brokers):**
Buyer acknowledges that Keller Williams Real Estate owners and/or agents may obtain marketing or other fees for displaying, promoting, processing, and/or explaining the services of the above mentioned ancillary service providers with whom it has business or contractual relationships but whom neither Keller Williams Real Estate owners nor its agents have any ownership interest or affiliate relationship.  Further, Buyer acknowledges that a mortgage lender is allowed to require you to use and pay for an attorney and/or credit reporting agency and/or appraiser chosen to represent mortgage lender's interest.

BUYERS ELECT that they may be contacted by a representative of Centennial Lending Group, LLC or Summit Mortgage Corp. for a free competitive rate quote.  Contact phone number for the free rate quote is: _____

**Buyer Acknowledgement:** If the Buyer herein is represented by Keller Williams Real Estate, and Keller Williams Real Estate also represents the Seller through a designated agency or dual agency relationship, it is acknowledged by the Buyer that the Seller may utilize the services of Keller Williams Real Estate: its agents, employees, and its affiliated service companies to provide the services to prepare the transaction for final settlement.

Witness _____   Buyer _____   Date 4/28/19

Witness _____   Buyer _____   Date _____



*ALV~ 4/28/19*

**Client Full**

**Active**                                          **Residential**                     $179,

**28 Alder Ln, Levittown, PA 19055**



Recent Change:        **04/24/2019 : NEW Listing : New Listing->ACT**
Upcoming OH:Public: Sun Apr 28, 1:00PM-3:00PM

| | | | |
|---|---|---|---|
| MLS #: | PABU466336 | Beds: | 3 |
| Tax ID #: | 05-039-387 | Baths: | 1 |
| Ownership Interest: | Fee Simple | Above Grade Fin SQFT: | 1,200 / Assessor |
| Structure Type: | Detached | Price / Sq Ft: | 149.92 |
| Levels/Stories: | 2 | Year Built: | 1953 |
| Waterfront: | No | Style: | Cape Cod |
| Garage: | No | Central Air: | No |
| | | Basement: | No |

**Location**

| | | | |
|---|---|---|---|
| County: | Bucks, PA | School District: | Bristol Township |
| MLS Area: | Bristol Twp - Bucks County (10105) | | |
| Subdiv / Neigh: | Appletree | | |

**Taxes and Assessment**

| | | | |
|---|---|---|---|
| Total Taxes / Year: | $3,975 / 2018 | Tax Assessed Value: | $14,800 / 2019 |
| School Tax: | $3,258 | Imprv Assessed Value: | $10,520 |
| County Tax: | $362 / Annually | Land Assessed Value: | $4,280 |
| City/Town Tax: | $355 / Annually | Land Use Code: | 1001 |
| Clean Green Assess: | No | Block/Lot: | 387 |
| Zoning: | R3 | | |

**Rooms**

| | Bed | Bath |
|---|---|---|
| Main | 1 | 1 Full |
| Upper 1 | 2 | |

**Building Info**

| | | | |
|---|---|---|---|
| Above Grade Fin SQFT: | 1,200 / Assessor | Construction Materials: | Frame |
| Total Fin SQFT: | 1,200 / Assessor | | |
| Tax Total Fin SQFT: | 1,200 | | |
| Total SQFT: | 1,200 / Assessor | | |

**Lot**

| | | | |
|---|---|---|---|
| Lot Acres / SQFT: | 0.15a / 6,464sf / Assessor | Lot Size Dimensions: | 64.00 x 101.00 |

**Ground Rent**

| | |
|---|---|
| Ground Rent Exists: | No |

**Interior Features**

Interior Features:    Accessibility Features: None, Main Floor Laundry

**Parking**

Parking:    Attached Carport, Driveway Parking, 2 Attached Carport Spaces

**Utilities**

Utilities:    Wall Unit, Cooling Fuel: Electric, Heating: Forced Air, Heating Fuel: Oil, Water Source: Public, Sewer: Pr
Sewer

**Remarks**

Public:    Super cute! This 2-story, Cape Cod has been updated & really well maintained. The first floor features

**AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE for BUYERS   rev. 7/2018**

BUYER(S): Angel L. Velazquez Jr                    AGENT: _Tracey L. xxx?_

**Disclosure of Business Relationship:** This is to give you notice that some owners and agents at Keller Williams Real Estate have a business relationship with certain providers of services related to your purchase, sale or refinance of real estate. Because of this relationship, this referral may provide some owners and agents at Keller Williams Real Estate a financial or other benefit.

Set forth is the charge or range of charges for the settlement services listed. You are NOT required to use any of the listed providers as a condition for your purchase, sale or refinance of subject property. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THOSE SERVICES. The name of the providers and the nature of the relationship are as follows:

**Bucks County Abstract Services, LLC & First Partners Abstract Company, Conveyancing Departments:**
Bucks County Abstract Services, LLC & First Partners Abstract Company provide Title Insurance services. The ownership of Bucks County Abstract Services, LLC is split among the owners and many of the agents of Keller Williams Real Estate which may include your Real Estate agent. Buyer acknowledges that the owners and agents, because of this relationship, may receive a financial or other benefit. Set forth below is the estimated charges or range of charges by Bucks County Abstract Services, LLC & First Partners Abstract Company for their title services:
1) Basic Title Insurance: see Buyer's Settlement Cost sheet
2) Enhanced Title Insurance Policy: is available, ask your agent
3) Title Insurance Endorsements to the lenders: $150 to $250 depending on type of mortgage obtained by Buyer.
4) Closing Service Letter (if requested by lender): $75.
5) Notary Fees: approximately $40.
6) Recording Fees and Services: approximately $300 depending upon the county.

_____ ☑  Buyer(s) **SELECT** Bucks County Abstract Services, LLC or First Partners Abstract Company to provide Title services.

_____ ☐  Buyers(s) **DO NOT SELECT** Bucks County Abstract Services, LLC or First Partner Abstract Company to provide Title Services.

Buyer further acknowledges that a representative from Bucks County Abstract Services, LLC or First Partners Abstract Company will contact Buyer for Social Security number(s) as required for the Domestic Relations Act and Patriots Act Searches.

**Centennial Lending Group, LLC & Summit Mortgage Corporation (mortgage brokers):**
Buyer acknowledges that Keller Williams Real Estate owners and/or agents may obtain marketing or other fees for displaying, promoting, processing, and/or explaining the services of the above mentioned ancillary service providers with whom it has business or contractual relationships but whom neither Keller Williams Real Estate owners nor its agents have any ownership interest or affiliate relationship. Further, Buyer acknowledges that a mortgage lender is allowed to require you to use and pay for an attorney and/or credit reporting agency and/or appraiser chosen to represent mortgage lender's interest.

BUYERS ELECT that they may be contacted by a representative of Centennial Lending Group, LLC or Summit Mortgage Corp. for a free competitive rate quote. Contact phone number for the free rate quote is:

_____

**Buyer Acknowledgement:** If the Buyer herein is represented by Keller Williams Real Estate, and Keller Williams Real Estate also represents the Seller through a designated agency or dual agency relationship, it is acknowledged by the Buyer that the Seller may utilize the services of Keller Williams Real Estate: its agents, employees, and its affiliated service companies to provide the services to prepare the transaction for final settlement.

Witness _____   Buyer _____   Date 4/28/19

Witness _____   Buyer _____   Date _____

# RESIDENTIAL LEAD-BASED PAINT HAZARDS DISCLOSURE FORM

**LPD**

## THIS FORM MUST BE COMPLETED FOR ANY PROPERTY BUILT PRIOR TO 1978

PROPERTY _____
SELLER _____

## LEAD WARNING STATEMENT

Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The Seller of any interest in residential real property is required to provide the Buyer with any information on lead-based paint hazards from risk assessments or inspections in the Seller's possession and notify the Buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

## SELLER'S DISCLOSURE

☐ **Seller has no knowledge** of the presence of lead-based paint and/or lead-based paint hazards in or about the Property.
☐ **Seller has knowledge** of the presence of lead-based paint and/or lead-based paint hazards in or about the Property. (Provide the basis for determining that lead-based paint and/or hazards exist, the location(s), the condition of the painted surfaces, and other available information concerning Seller's knowledge of the presence of lead-based paint and/or lead-based paint hazards.)

## SELLER'S RECORDS/REPORTS

☐ **Seller has no records or reports** pertaining to lead-based paint and/or lead-based paint hazards in or about the Property.
☐ **Seller has provided** Buyer with all available records and reports regarding lead-based paint and/or lead-based paint hazards in or about the Property. (List documents): _____

Seller certifies that to the best of Seller's knowledge the above statements are true and accurate.

| SELLER | | DATE | |
|--------|--|------|--|
| SELLER | | DATE | |
| SELLER | | DATE | |
| BUYER | | | |

**DATE OF AGREEMENT**

## BUYER'S ACKNOWLEDGMENT

☑ Buyer has received the pamphlet *Protect Your Family from Lead in Your Home* and has read the Lead Warning Statement.
☐ Buyer has reviewed Seller's disclosure of known lead-based paint and/or lead-based paint hazards and has received the records and reports regarding lead-based paint and/or lead-based paint hazards identified above.

Buyer has (initial one):
☑ received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or
☐ waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

Buyer certifies that to the best of Buyer's knowledge the statements contained in Buyer's Acknowledgement **are true and accurate.**

| BUYER | | DATE | 4/28/19 |
|-------|--|------|---------|
| BUYER | | DATE | |
| BUYER | | DATE | |

## AGENT ACKNOWLEDGEMENT AND CERTIFICATION

☐ Agent/Licensee represents that Agent has informed Seller of Seller's obligations under the Residential Lead-Based-Paint Hazard Reduction Act, 42 U.S.C. §4852(d), and is aware of Agent's responsibility to ensure compliance.

The following have reviewed the information above and certify that the Agent statements are true to the best of their knowledge and belief **Seller Agent and Buyer Agent must both sign this form.**

**BROKER FOR SELLER (Company Name)** Keller Williams
LICENSEE _____ DATE _____

**BROKER FOR BUYER (Company Name)** Keller Williams Real Estate
LICENSEE _____ DATE _____

Pennsylvania Association of Realtors®

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2016

## STANDARD AGREEMENT FOR THE SALE OF REAL ESTATE

ASR

### PARTIES

| BUYER(S): | SELLER(S): |
|---|---|
| Angel L Velazquez Jr | Michael E Graham |
| **BUYER'S MAILING ADDRESS:** | **SELLER'S MAILING ADDRESS:** 28 Alder Lane, Levittown, PA 19055 |

### PROPERTY

ADDRESS (including postal city) 28 Alder Lane
Levittown, PA 19055 _____ ZIP 19055 _____
in the municipality of _____, County of Bucks _____
in the School District of Bristol _____, in the Commonwealth of Pennsylvania. and/or
Tax ID #(s):05-039-387
Identification (e.g., Parcel #; Lot, Block; Deed Book, Page, Recording Date): _____

### BUYER'S RELATIONSHIP WITH PA LICENSED BROKER
☐ No Business Relationship (Buyer is not represented by a broker)

| Broker (Company) Keller Williams Real Estate | Licensee(s) (Name) Tracey Langan |
|---|---|
| Company License # RB065551 | State License # RS330794 |
| Company Address 584 Middletown Blvd, Suite A-50 | Direct Phone(s) 215 499-6201 |
| Langhorne, PA 19047 | Cell Phone(s) 215 499-6201 |
| Company Phone 215-757-6100 | Email traceylangan@kw.com |
| Company Fax 215-702-0200 | Licensee(s) is (check only one): |
| Broker is (check only one): | ☐ Buyer Agent (all company licensees represent Buyer) |
| ☒ Buyer Agent (Broker represents Buyer only) | ☒ Buyer Agent with Designated Agency (only Licensee(s) named |
| ☐ Dual Agent (See Dual and/or Designated Agent box below) | above represent Buyer) |
| | ☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Buyer)

### SELLER'S RELATIONSHIP WITH PA LICENSED BROKER
☐ No Business Relationship (Seller is not represented by a broker)

| Broker (Company) Keller Williams - Bucks County South | Licensee(s) (Name) Kelly Krimmel |
|---|---|
| Company License RB C6551 | State License # RS303702 |
| Company Address 584 Middletown Blvd,, Suite A-50, Langhorne, | Direct Phone(s) 267-902-3185 |
| PA 19047 | Cell Phone(s) 2157576100 |
| Company Phone 215 - 757 - 6100 | Email kkrim7@comcast.net |
| Company Fax 215 - 752 - 0200 | Licensee(s) is (check only one): |
| Broker is (check only one): | ☐ Seller Agent (all company licensees represent Seller) |
| ☐ Seller Agent (Broker represents Seller only) | ☒ Seller Agent with Designated Agency (only Licensee(s) named |
| ☒ Dual Agent (See Dual and/or Designated Agent box below) | above represent Seller) |
| | ☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Seller)

### DUAL AND OR DESIGNATED AGENCY

A Broker is a Dual Agent when a Broker represents both Buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents Buyer and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Buyer and Seller. If the same Licensee is designated for Buyer and Seller, the Licensee is a Dual Agent.

**By signing this Agreement, Buyer and Seller each acknowledge having been previously informed of, and consented to, dual agency, if applicable.**

Buyer Initials: ____    ASR Page 1 of 14    Seller Initials: MEG

Pennsylvania Association of Realtors®

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2018

# 1. **By this Agreement**, dated 04/28/2019

Seller hereby agrees to sell and convey to Buyer, who agrees to purchase, the identified Property.

## 2. PURCHASE PRICE AND DEPOSITS (4-14)

(A) Purchase Price $192,500

(One Hundred Ninety Two Thousand Five Hundred

U.S. Dollars), to be paid by Buyer as follows:

| | |
|---|---|
| 1. Initial Deposit within ___ 10 ___ days (5 if not specified) of Execution Date, if not included with this Agreement | $ 1,000 |
| 2. Additional Deposit within ___ days of the Execution Date | $ |
| 3. | $ |

Remaining balance will be paid at settlement.

(B) **All funds paid by Buyer, including deposits, will be paid by check, cashier's check or wired funds. All funds paid by Buyer within 30 days of settlement, including funds paid at settlement, will be by cashier's check or wired funds, but not by personal check.**

(C) Deposits, regardless of the form of payment, will be paid in U.S. Dollars to Broker for Seller (unless otherwise stated here: ____ ), who will retain deposits in an escrow account in conformity with all applicable laws and regulations until consummation or termination of this Agreement. Only real estate brokers are required to hold deposits in accordance with the rules and regulations of the State Real Estate Commission. Checks tendered as deposit monies may be held uncashed pending the execution of this Agreement.

## 3. SELLER ASSIST (If Applicable) (1-10)

Seller will pay $ _____ or 5 _____ % of Purchase Price (0 if not specified) toward Buyer's costs, as permitted by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is approved by mortgage lender.

## 4. SETTLEMENT AND POSSESSION (4-14)

(A) Settlement Date is 06/04/2019   5-22-19 (TL)   ALV² 4/28/19   MEG 04/28/2019 10:07 PM EDT dotloop verified , or before if Buyer and Seller agree.

(B) Settlement will occur in the county where the Property is located or in an adjacent county, during normal business hours, unless Buyer and Seller agree otherwise.

(C) At time of settlement, the following will be pro-rated on a daily basis between Buyer and Seller, reimbursing where applicable: current taxes; rents; interest on mortgage assumptions; condominium fees and homeowner association fees; water and/or sewer fees, together with any other lienable municipal service fees. All charges will be prorated for the period(s) covered. Seller will pay up to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated here:

(D) For purposes of prorating real estate taxes, the "periods covered" are as follows:
  1. Municipal tax bills for all counties and municipalities in Pennsylvania are for the period from January 1 to December 31.
  2. School tax bills for the Philadelphia, Pittsburgh and Scranton School Districts are for the period from January 1 to December 31. School tax bills for all other school districts are for the period from July 1 to June 30.

(E) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: _____

(F) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here: _____

(G) Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures broom-clean, at day and time of settlement, unless Seller, before signing this Agreement, has identified in writing that the Property is subject to a lease.

(H) If Seller has identified in writing that the Property is subject to a lease, possession is to be delivered by deed, existing keys and assignment of existing leases for the Property, together with security deposits and interest, if any, at day and time of settlement. Seller will not enter into any new leases, nor extend existing leases, for the Property without the written consent of Buyer. Buyer will acknowledge existing lease(s) by initialing the lease(s) at the execution of this Agreement, unless otherwise stated in this Agreement.

☐ **Tenant-Occupied Property Addendum (PAR Form TOP) is attached and made part of this Agreement.**

## 5. DATES/TIME IS OF THE ESSENCE (1-10)

(A) Written acceptance of all parties will be on or before: 04/29/2019

(B) The Settlement Date and all other dates and times identified for the performance of any obligations of this Agreement are of the essence and are binding.

(C) The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by signing and/or initialing it. For purposes of this Agreement, the number of days will be counted from the Execution Date, excluding the day this Agreement was executed and including the last day of the time period. **All changes to this Agreement should be initialed and dated.**

(D) The Settlement Date is not extended by any other provision of this Agreement and may only be extended by mutual written agreement of the parties.

Buyer Initials: [initials]   ASR Page 2 of 14   Seller Initials: MEG

(E) Certain terms and time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed terms and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable to all parties, except where restricted by law.

## 6. ZONING (4-14)

Failure of this Agreement to contain the zoning classification (except in cases where the property [and each parcel thereof, if subdividable] is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.

**Zoning Classification, as set forth in the local zoning ordinance:** R3

## 7. FIXTURES AND PERSONAL PROPERTY (1-17)

(A) INCLUDED in this sale, unless otherwise stated, are all existing items permanently installed in or on the Property, free of liens, and other items including plumbing; heating; gas fireplace logs; radiator covers; lighting fixtures (including chandeliers and ceiling fans); pools; spas and hot tubs (including covers and cleaning equipment); electric animal fencing systems (excluding collars); garage door openers and transmitters; television antennas; mounting brackets and hardware for television and sound equipment; unpotted shrubbery, plantings and trees; smoke detectors and carbon monoxide detectors; sump pumps; storage sheds; fences; mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors; window covering hardware (including rods and brackets); shades and blinds; awnings; central vacuum system (with attachments); built-in air conditioners; built-in appliances; the range/oven; dishwashers; trash compactors; any remaining heating and cooking fuels stored on the Property at the time of settlement; and, if owned, water treatment systems, propane tanks, satellite dishes and security systems. Unless stated otherwise, the following items are included in the sale, but not in the Purchase Price: _____

(B) The following items are LEASED (not owned by Seller). Contact the provider/vendor for more information (e.g., water treatment systems, propane tanks, satellite dishes and security systems): _____
(C) EXCLUDED fixtures and items: _____

## 8. MORTGAGE CONTINGENCY (10-18)

☐ WAIVED. This sale is NOT contingent on mortgage financing, although Buyer may obtain mortgage financing and/or the parties may include an appraisal contingency.
☑ ELECTED.
(A) This sale is contingent upon Buyer obtaining mortgage financing according to the following terms:

| First Mortgage on the Property | Second Mortgage on the Property |
|---|---|
| Loan Amount $ | Loan Amount $ |
| Minimum Term 30 years | Minimum Term years |
| Type of mortgage FHA | Type of mortgage |
| For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed 96.5 % | For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed % |
| Mortgage lender Direct Mortgage Lending | Mortgage lender |
| Interest rate 3.875 %, however, **Buyer agrees to accept the interest rate as may be committed by the mortgage lender**, not to exceed a maximum interest rate of 5.0 %. | Interest rate %; however, **Buyer agrees to accept the interest rate as may be committed by the mortgage lender**, not to exceed a maximum interest rate of %. |
| Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed % (0% if not specified) of the mortgage loan. | Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed % (0% if not specified) of the mortgage loan. |

ALV JY 4/23/19
MEG 04/26/19 10:07 PM EDT dotloop verified

(B) Upon receiving documentation demonstrating lender's approval, whether conditional or outright, of Buyer's mortgage application(s) according to the terms set forth above, Buyer will promptly deliver a copy of the documentation to Seller, but in any case no later than 05/16/2019 _____
   1. If Seller does not receive a copy of the documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s) by the date indicated above, Seller may terminate this Agreement by written notice to Buyer. Seller's right to terminate continues until Buyer delivers documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s) to Seller. Until Seller terminates this Agreement pursuant to this Paragraph, Buyer must continue to make a good faith effort to obtain mortgage financing.
   2. Seller may terminate this Agreement by written notice to Buyer after the date indicated above if the documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s):
      a. Does not satisfy the terms of Paragraph 8(A), OR
      b. Contains any condition not specified in this Agreement (e.g., Buyer must settle on another property, an appraisal must be received by the lender, or the approval is not valid through the Settlement Date) that is not satisfied and/or removed in writing by the mortgage lender(s) within 7 DAYS after the date indicated in Paragraph 8(B), or any extension thereof, other than those conditions that are customarily satisfied at or near settlement (e.g., obtaining insurance, confirming employment).

Buyer Initials: ALV JH          ASR Page 3 of 14          Seller Initials: MEG

3. If this Agreement is terminated pursuant to Paragraphs 8(B)(1) or (2), or the mortgage loan(s) is not obtained for settlement, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 and this Agreement will be VOID. Buyer will be responsible for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and any costs incurred by Buyer for (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation, for cancellation, (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation, (3) Appraisal fees and charges paid in advance to mortgage lender(s).

(C) The Loan-to-Value ratio (LTV) is used by lenders as one tool to help assess their potential risk of a mortgage loan. A particular LTV may be necessary to qualify for certain loans, or buyers might be required to pay additional fees if the LTV exceeds a specific level. The appraised value of the Property may be used by lenders to determine the maximum amount of a mortgage loan. The appraised value is determined by an independent appraiser, subject to the mortgage lender's underwriter review, and may be higher or lower than the Purchase Price and/or market price of the property.

(D) The interest rate(s) and fee(s) provisions in Paragraph 8(A) are satisfied if the mortgage lender(s) gives Buyer the right to guarantee the interest rate(s) and fee(s) at or below the maximum levels stated. If lender(s) gives Buyer the right to lock in the interest rate(s), Buyer will do so at least __15__ days before Settlement Date. Buyer gives Seller the right, at Seller's sole option and as permitted by law and the mortgage lender(s), to contribute financially, without promise of reimbursement, to Buyer and/or the mortgage lender(s) to make the above mortgage term(s) available to Buyer.

(E) Within _____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will make a completed mortgage application (including payment for and ordering of credit reports without delay) for the mortgage terms and to the mortgage lender(s) identified in Paragraph 8(A), if any, otherwise to a responsible mortgage lender(s) of Buyer's choice. Broker for Buyer, if any, otherwise Broker for Seller, is authorized to communicate with the mortgage lender(s) to assist in the mortgage loan process. Broker for Seller, if any, is permitted to contact the mortgage lender(s) at any time to determine the status of the mortgage loan application.

(F) **Buyer will be in default of this Agreement if Buyer furnishes false information** to anyone concerning Buyer's financial and/or employment status, fails to cooperate in good faith with processing the mortgage loan application (including payment for and ordering of appraisal without delay), fails to lock in interest rate(s) as stated in Paragraph 8(D), or otherwise causes the lender to reject, or refuse to approve or issue, a mortgage loan commitment.

(G) If the mortgage lender(s), or a property and casualty insurer providing insurance required by the mortgage lender(s), requires repairs to the Property, Buyer will, upon receiving the requirements, deliver a copy of the requirements to Seller. Within __5__ DAYS of receiving the copy of the requirements, Seller will notify Buyer whether Seller will make the required repairs at Seller's expense.

   1. If Seller makes the required repairs to the satisfaction of the mortgage lender and/or insurer, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement.
   2. If Seller will not make the required repairs, **or if Seller fails to respond within the stated time,** Buyer will, within __5__ DAYS, notify Seller of Buyer's choice to:
      a. Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which will not be unreasonably withheld (Seller may require that Buyer sign a pre-settlement possession agreement such as the Pre-Settlement Possession Addendum [PAR Form PRE], which shall not, in and of itself, be considered unreasonable), OR
      b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.
      **If Buyer fails to respond** within the time stated in Paragraph 8(G)(2) or fails to terminate this Agreement by written notice to Seller within that time, **Buyer will accept the Property,** make the required repairs/improvements at Buyer's expense and agree to the RELEASE in Paragraph 28 of this Agreement.

---

**FHA/VA, IF APPLICABLE**

(H) It is expressly agreed that notwithstanding any other provisions of this contract, Buyer will not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless Buyer has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner, Veterans Administration, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than $ 192,500 _____ (the Purchase Price as stated in this Agreement). Buyer will have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value nor the condition of the Property. Buyer should satisfy himself/herself that the price and condition of the Property are acceptable.

**Warning:** Section 1010 of Title 18, U.S.C., Department of Housing and Urban Development and Federal Housing Administration Transactions, provides, "Whoever for the purpose of influencing in any way the action of such Department, makes, passes, utters or publishes any statement, knowing the same to be false shall be fined under this title or imprisoned not more than two years, or both."

(I) **U.S. Department of Housing and Urban Development (HUD) NOTICE TO PURCHASERS: Buyer's Acknowledgement**
   ☑ Buyer has received the HUD Notice "For Your Protection: Get a Home Inspection." Buyer understands the importance of getting an independent home inspection and has thought about this before signing this Agreement. Buyer understands that FHA will not perform a home inspection nor guarantee the price or condition of the Property.

(J) **Certification** We the undersigned, Seller(s) and Buyer(s) party to this transaction each certify that the terms of this contract for purchase are true to the best of our knowledge and belief, and that any other agreement entered into by any of these parties in connection with this transaction is attached to this Agreement.

---

Buyer Initials: [____]          ASR Page 4 of 14          Seller Initials:  [____]

**9.  CHANGE IN BUYER'S FINANCIAL STATUS (9-18)**

If a change in Buyer's financial status affects Buyer's ability to purchase, Buyer will promptly notify Seller and lender(s) to whom the Buyer submitted a mortgage application, if any, in writing. A change in financial status includes, but is not limited to, loss or a change in employment; failure or loss of sale of Buyer's home, Buyer having incurred a new financial obligation, entry of a judgment against Buyer. **Buyer understands that applying for and/or incurring an additional financial obligation may affect Buyer's ability to purchase.**

**10.  SELLER REPRESENTATIONS (4-14)**

**(A) Status of Water**

Seller represents that the Property is served by

☑ Public Water   ☐ Community Water   ☐ On-site Water   ☐ None   ☐ _____

**(B) Status of Sewer**

1.  Seller represents that the Property is served by:

☑ Public Sewer   ☐ Community Sewage Disposal System   ☐ Ten-Acre Permit Exemption (see Sewage Notice 2)
☐ Individual On-lot Sewage Disposal System (see Sewage Notice 1)   ☐ Holding Tank (see Sewage Notice 3)
☐ Individual On-lot Sewage Disposal System in Proximity to Well (see Sewage Notice 4, if applicable)
☐ None (see Sewage Notice 1)   ☐ None Available/Permit Limitations in Effect (see Sewage Notice 5)
☐ _____

2.  **Notices Pursuant to the Pennsylvania Sewage Facilities Act**

**Notice 1: There is no currently existing community sewage system available for the subject property.** Section 7 of the Pennsylvania Sewage Facilities Act provides that no person shall install, construct, request bid proposals for construction, alter, repair or occupy any building or structure for which an individual sewage system is to be installed, without first obtaining a permit. Buyer is advised by this notice that, before signing this Agreement, Buyer should contact the local agency charged with administering the Act to determine the procedure and requirements for obtaining a permit for an individual sewage system. The local agency charged with administering the Act will be the municipality where the Property is located or that municipality working cooperatively with others.

**Notice 2: This Property is serviced by an individual sewage system installed under the ten-acre permit exemption provisions of Section 7 of the Pennsylvania Sewage Facilities Act.** (Section 7 provides that a permit may not be required before installing, constructing, awarding a contract for construction, altering, repairing or connecting to an individual sewage system where a ten-acre parcel or lot is subdivided from a parent tract after January 10, 1987). Buyer is advised that soils and site testing were not conducted and that, should the system malfunction, the owner of the Property or properties serviced by the system at the time of a malfunction may be held liable for any contamination, pollution, public health hazard or nuisance which occurs as a result.

**Notice 3: This Property is serviced by a holding tank (permanent or temporary) to which sewage is conveyed by a water carrying system and which is designed and constructed to facilitate ultimate disposal of the sewage at another site.** Pursuant to the Pennsylvania Sewage Facilities Act, Seller must provide a history of the annual cost of maintaining the tank from the date of its installation or December 14, 1995, whichever is later.

**Notice 4: An individual sewage system has been installed at an isolation distance from a well that is less than the distance specified by regulation.** The regulations at 25 Pa. Code §73.13 pertaining to minimum horizontal isolation distances provide guidance. Subsection (b) of §73.13 states that the minimum horizontal isolation distance between an individual water supply or water supply system suction line and treatment tanks shall be 50 feet. Subsection (c) of §73.13 states that the horizontal isolation distance between the individual water supply or water supply system suction line and the perimeter of the absorption area shall be 100 feet.

**Notice 5: This lot is within an area in which permit limitations are in effect and is subject to those limitations.** Sewage facilities are not available for this lot and construction of a structure to be served by sewage facilities may not begin until the municipality completes a major planning requirement pursuant to the Pennsylvania Sewage Facilities Act and regulations promulgated thereunder.

**(C) Historic Preservation**

Seller is not aware of historic preservation restrictions regarding the Property unless otherwise stated here: _____

**(D) Land Use Restrictions**

1.  ☐ Property, or a portion of it, is subject to land use restrictions and may be preferentially assessed for tax purposes under the following Act(s) (see Notices Regarding Land Use Restrictions below):

☐ Agricultural Area Security Law (Right-to-Farm Act: Act 43 of 1981; 3 P.S. § 901 et seq.)
☐ Farmland and Forest Land Assessment Act (Clean and Green Program; Act 319 of 1974; 72 P.S. § 5490.1 et seq.)
☐ Open Space Act (Act 442 of 1967; 32 P.S. § 5001 et seq.)
☐ Conservation Reserve Program (16 U.S.C. § 3831 et seq.)
☐ Other _____

2.  **Notices Regarding Land Use Restrictions**

a.  **Pennsylvania Right-To-Farm Act**: The property you are buying may be located in an area where agricultural operations take place. Pennsylvania protects agricultural resources for the production of food and agricultural products. The law limits circumstances where normal agricultural operations may be subject to nuisance lawsuits or restrictive ordinances.

Buyer Initials: ALVR    ASR Page 5 of 14    Seller Initials: 

   b. **Clean and Green Program** Properties enrolled in the Clean and Green Program receive preferential property tax assessment. Buyer and Seller have been advised of the need to contact the County Tax Assessment Office before the execution of this Agreement to determine the property tax implications that will or may result from the sale of the Property, or that may result in the future as a result of any change in use of the Property or the land from which it is being separated.

   c. **Open Space Act** This Act enables counties to enter into covenants with owners of land designated as farm, forest, water supply, or open space land on an adopted municipal, county or regional plan for the purpose of preserving the land as open space. A covenant between the owner and county is binding upon any Buyer of the Property during the period of time that the covenant is in effect (5 or 10 years). Covenants automatically renew at the end of the covenant period unless specific termination notice procedures are followed. Buyer has been advised of the need to determine the restrictions that will apply from the sale of the Property to Buyer and the property tax implications that will or may result from a change in use of the Property, or any portion of it. Buyer is further advised to determine the term of any covenant now in effect.

   d. **Conservation Reserve (Enhancement) Program** Properties enrolled in the Conservation Reserve Program or CREP are environmentally-sensitive areas, the owners of which receive compensation in exchange for an agreement to maintain the land in its natural state. Contracts last from 10 to 15 years and carry penalties to Seller if terminated early by Buyer. Buyer has been advised of the need to determine the restrictions on development of the Property and the term of any contract now in effect. Seller is advised to determine the financial implications that will or may result from the sale of the Property.

(E) **Real Estate Seller Disclosure Law**
   Generally, the Real Estate Seller Disclosure Law requires that before an agreement of sale is signed, the seller in a residential real estate transfer must make certain disclosures regarding the property to potential buyers in a form defined by the law. A residential real estate transfer is defined as a sale, exchange, installment sales contract, lease with an option to buy, grant or other transfer of an interest in real property where **NOT LESS THAN ONE AND NOT MORE THAN FOUR RESIDENTIAL DWELLING UNITS** are involved. Disclosures for condominiums and cooperatives are limited to the seller's particular unit(s). Disclosures regarding common areas or facilities are not required, as those elements are already addressed in the laws that govern the resale of condominium and cooperative interests.

(F) **Public and/or Private Assessments**
   1. Seller represents that, as of the date Seller signed this Agreement, no public improvement, condominium or homeowner association assessments have been made against the Property which remain unpaid, and that no notice by any government or public authority (excluding assessed value) has been served upon Seller or anyone on Seller's behalf, including notices relating to violations of zoning, housing, building, safety or fire ordinances that remain uncorrected, and that Seller knows of no condition that would constitute a violation of any such ordinances that remain uncorrected, unless otherwise specified here: _____

   _____

   2. Seller knows of no other potential notices (including violations) and/or assessments except as follows: _____

   _____

(G) **Highway Occupancy Permit**
   Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.

**11. WAIVER OF CONTINGENCIES (9-05)**
If this Agreement is contingent on Buyer's right to inspect and/or repair the Property, or to verify insurability, environmental conditions, boundaries, certifications, zoning classification or use, or any other information regarding the Property, **Buyer's failure to exercise any of Buyer's options within the times set forth in this Agreement is a WAIVER of that contingency and Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement.**

**12. BUYER'S DUE DILIGENCE/INSPECTIONS (10-18)**
  (A) **Rights and Responsibilities**
    1. Seller will provide access to insurers' representatives, and, as may be required by this Agreement or by mortgage lender(s), to surveyors, municipal officials, appraisers and inspectors; in addition, unless otherwise agreed, only Parties and their real estate licensee(s) may attend any inspections.
    2. Buyer may make two pre-settlement walk-through inspections of the Property for the limited purpose of determining that the condition of the Property is as required by this Agreement and any addenda. Buyer's right to these inspections is not waived by any other provision of this Agreement.
    3. **Seller will have heating and all utilities (including fuel(s)) on for all inspections/appraisals.**
    4. All inspectors, including home inspectors, are authorized by Buyer to provide a copy of any inspection Report to Broker for Buyer.
    5. Seller has the right, upon request, to receive a free copy of any inspection Report from the party for whom it was prepared. Unless otherwise stated, Seller does not have the right to receive a copy of any lender's appraisal report.

  (B) Buyer waives or elects at Buyer's expense to have the following inspections, certifications, and investigations (referred to as "Inspection" or "Inspections") performed by professional contractors, home inspectors, engineers, architects and other properly licensed or otherwise qualified professionals. All inspections shall be non-invasive, unless otherwise agreed in writing. If the same inspector is inspecting more than one system, the inspector must comply with the Home Inspection Law. (See Paragraph 12(D) for Notices Regarding Property and Environmental Inspections)

  (C) For elected Inspection(s), Buyer will, within the Contingency Period stated in Paragraph 13(A), complete Inspections, obtain any Inspection Reports or results (referred to as "Report" or "Reports"), and accept the Property, terminate this Agreement, or submit a written corrective proposal to Seller, according to the terms of Paragraph 13(B).



**Home/Property Inspections and Environmental Hazards (mold, etc.)**

Elected [✓] [ ]   Buyer may conduct an inspection of the Property's structural components, roof, exterior windows and exterior doors, exterior building material, fascia, gutters and downspouts, swimming pools, hot tubs and spas, appliances, electrical systems, interior and exterior plumbing, public sewer systems, heating and cooling systems, water penetration, electromagnetic fields, wetlands and flood plain delineation, structure square footage, mold and other environmental hazards (e.g., fungi, indoor air quality, asbestos, underground storage tanks, etc.) and any other items Buyer may select. If Buyer elects to have a home inspection of the Property, as defined in the Home Inspection Law, the home inspection must be performed by a full member in good standing of a national home inspection association, or a person supervised by a full member of a national home inspection association, in accordance with the ethical standards and code of conduct or practice of that association, or by a properly licensed or registered engineer or architect. (See Notices Regarding Property & Environmental Inspections)   Waived [ ] [ ]

**Wood Infestation**

Elected [✓] [ ]   Buyer may obtain a written "Wood-Destroying Insect Infestation Inspection Report" from an inspector certified as a wood-destroying pests pesticide applicator and will deliver it and all supporting documents and drawings provided by the inspector to Seller. The Report is to be made satisfactory to and in compliance with applicable laws, mortgage lender requirements, and/or Federal Insuring and Guaranteeing Agency requirements. The Inspection is to be limited to all readily-visible and accessible areas of all structures on the Property, except fences. If the Inspection reveals active infestation(s), Buyer, at Buyer's expense, may obtain a Proposal from a wood-destroying pests pesticide applicator to treat the Property. If the Inspection reveals damage from active or previous infestation(s), Buyer may obtain a written Report from a professional contractor, home inspector or structural engineer that is limited to structural damage to the Property caused by wood-destroying organisms and a Proposal to repair the Property   Waived [ ] [ ]

**Deeds, Restrictions and Zoning**

Elected [✓] [ ]   Buyer may investigate easements, deed and use restrictions (including any historic preservation restrictions or ordinances) that apply to the Property and review local zoning ordinances. Buyer may verify that the present use of the Property (such as in-law quarters, apartments, home office, day care, commercial or recreational vehicle parking) is permitted and may elect to make the Agreement contingent upon an anticipated use. Present use. _____   Waived [ ] [ ]

**Water Service**

Elected [ ] [ ]   Buyer may obtain an Inspection of the quality and quantity of the water system from a properly licensed or otherwise qualified water/well testing company. If and as required by the inspection company, Seller, at Seller's expense, will locate and provide access to the on-site (or individual) water system. Seller will restore the Property to its previous condition, at Seller's expense, prior to settlement.   Waived [ ] [✓]

**Radon**

Elected [✓] [ ]   Buyer may obtain a radon test of the Property from a certified inspector. The U.S. Environmental Protection Agency (EPA) advises corrective action if the average annual exposure to radon is equal to or higher than 0.02 working levels or 4 picoCuries/liter (4pCi/L). Radon is a natural, radioactive gas that is produced in the ground by the normal decay of uranium and radium. Studies indicate that extended exposure to high levels of radon gas can increase the risk of lung cancer. Radon can find its way into any air-space and can permeate a structure. If a house has a radon problem, it usually can be cured by increased ventilation and/or by preventing radon entry. Any person who tests, mitigates or safeguards a building for radon in Pennsylvania must be certified by the Department of Environmental Protection. Information about radon and about certified testing or mitigation firms is available through Department of Environmental Protection, Bureau of Radiation Protection, 13th Floor, Rachel Carson State Office Building, P.O. Box 8469, Harrisburg, PA 17105-8469, (800) 23RADON or (717) 783-3594. www.epa.gov   Waived [ ] [ ]

**On-lot Sewage (If Applicable)**

Elected [ ] [ ]   Buyer may obtain an Inspection of the individual on-lot sewage disposal system, which may include a hydraulic load test, from a qualified, professional inspector. If and as required by the inspection company, Seller, at Seller's expense, will locate, provide access to, empty the individual on-lot sewage disposal system and provide all water needed, unless otherwise agreed. Seller will restore the Property to its previous condition, at Seller's expense, prior to settlement. See Paragraph 13(C) for more information regarding the Individual On-lot Sewage Inspection Contingency.   Waived [ ] [✓]

**Property and Flood Insurance**

Elected [✓] [ ]   Buyer may determine the insurability of the Property by making application for property and casualty insurance for the Property to a responsible insurer. Broker for Buyer, if any, otherwise Broker for Seller, may communicate with the insurer to assist in the insurance process. If the Property is located in a specially-designated flood zone, Buyer may be required to carry flood insurance at Buyer's expense, which may need to be ordered 14 days or more prior to Settlement Date. Revised flood maps and changes to Federal law may substantially increase future flood insurance premiums or require insurance for formerly exempt properties. Buyer should consult with one or more flood insurance agents regarding the need for flood insurance and possible premium increases.   Waived [ ] [ ]

**Property Boundaries**

Elected [ ] [ ]   Buyer may engage the services of a surveyor, title abstractor, or other qualified professional to assess the legal description, certainty and location of boundaries and/or quantum of land. Most sellers have not had the Property surveyed as it is not a requirement of property transfer in Pennsylvania. Any fences, hedges, walls and other natural or constructed barriers may or may not represent the true boundary lines of the Property. Any numerical representations of size of property are approximations only and may be inaccurate.   Waived [ ] [✓]

Buyer Initials: [ALV]          ASR Page 7 of 14          Seller Initials: [MEG]

**Lead-Based Paint Hazards (For Properties built prior to 1978 only)**

| Elected | | | Before Buyer is obligated to purchase a residential dwelling built prior to 1978, Buyer has the option to conduct a risk assessment and/or inspection of the Property for the presence of lead-based paint and/or lead-based paint hazards. Regardless of whether this inspection is elected or waived, the Residential Lead-Based Paint Hazard Reduction Act requires a seller of property built prior to 1978 to provide the Buyer with an EPA-approved lead hazards information pamphlet titled "Protect Your Family from Lead in Your Home," along with a separate form, attached to this Agreement, disclosing Seller's knowledge of lead-based paint hazards and any lead-based paint records regarding the Property. | Waived | |
|---|---|---|---|---|---|

**Other**

| Elected | | | | Waived | |
|---|---|---|---|---|---|

The Inspections elected above do not apply to the following existing conditions and/or items: _____

---

(D) **Notices Regarding Property & Environmental Inspections**

1. **Exterior Building Materials:** Poor or improper installation of exterior building materials may result in moisture penetrating the surface of a structure where it may cause mold and damage to the building's frame.
2. **Asbestos:** Asbestos is linked with several adverse health effects, including various forms of cancer.
3. **Environmental Hazards:** The U.S. Environmental Protection Agency has a list of hazardous substances, the use and disposal of which are restricted by law. Generally, if hazardous substances are found on a property, it is the property owner's responsibility to dispose of them properly.
4. **Wetlands:** Wetlands are protected by the federal and state governments. Buyer may wish to hire an environmental engineer to investigate whether the Property is located in a wetlands area to determine if permits for plans to build, improve or develop the property would be affected or denied because of its location in a wetlands area.
5. **Mold, Fungi and Indoor Air Quality:** Indoor mold contamination and the inhalation of bioaerosols (bacteria, mold spores, pollen and viruses) have been associated with allergic responses.
6. **Additional Information:** Inquiries or requests for more information about asbestos and other hazardous substances can be directed to the U.S. Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Ave., N.W., Washington, D.C. 20460, (202) 272-0167, and/or the Department of Health, Commonwealth of Pennsylvania, Division of Environmental Health, Harrisburg, PA 17120. Information about indoor air quality issues is available through the Pennsylvania Department of Health and may be obtained by contacting Health & Welfare Building, 8th Floor West, 625 Forster St., Harrisburg, PA 17120, or by calling 1-877-724-3258.

## 13. INSPECTION CONTINGENCY (10-18)

(A) The Contingency Period is _____ days (10 if not specified) from the Execution Date of this Agreement for each Inspection elected in Paragraph 12(C).

(B) **Within the stated Contingency Period** and as the result of any Inspection elected in Paragraph 12(C), except as stated in Paragraph 13(C):

1. If the results of all inspections elected in Paragraph 12(C) are satisfactory to Buyer, Buyer WILL **present all Report(s) in their entirety to Seller, accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this Agreement,** OR
2. If the results of any inspection elected in Paragraph 12(C) are unsatisfactory to Buyer, Buyer WILL **present all Report(s) in their entirety to Seller and terminate this Agreement** by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement, OR
3. If the results of any inspection elected in Paragraph 12(C) are unsatisfactory to Buyer, Buyer WILL **present all Report(s) in their entirety to Seller with a Written Corrective Proposal ("Proposal")** listing corrections and/or credits desired by Buyer.

The Proposal may, but is not required to, include the name(s) of a properly licensed or qualified professional(s) to perform the corrections requested in the Proposal, provisions for payment, including retests, and a projected date for completion of the corrections. Buyer agrees that Seller will not be held liable for corrections that do not comply with mortgage lender or governmental requirements if performed in a workmanlike manner according to the terms of Buyer's Proposal.

a. Following the end of the Contingency Period, Buyer and Seller will have _____ days (5 if not specified) for a Negotiation Period. During the Negotiation Period:

(1) Seller will acknowledge in writing Seller's agreement to satisfy all the terms of Buyer's Proposal OR

(2) Buyer and Seller will negotiate another mutually acceptable written agreement, providing for any repairs or improvements to the Property and/or any credit to Buyer at settlement, as acceptable to the mortgage lender, if any.

If Seller agrees to satisfy all the terms of Buyer's Proposal, or Buyer and Seller enter into another mutually acceptable written agreement, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement and the Negotiation Period ends.

b. If no mutually acceptable written agreement is reached, or if Seller fails to respond during the Negotiation Period, within _____ days (2 if not specified) following the end of the Negotiation Period, Buyer will:

(1) Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this Agreement, OR

(2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

**If Buyer and Seller do not reach a mutually acceptable written agreement, and Buyer does** _____ **terminate this**

| Buyer Initials: | ASR Page 8 of 14 | Seller Initials: |
|---|---|---|

Agreement by written notice to Seller within the time allotted in Paragraph 13(B)(3)(b), Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement. Ongoing negotiations do not automatically extend the Negotiation Period.

(C) If a Report reveals the need to expand or replace the existing individual on-lot sewage disposal system, Seller may, within _____ days (25 if not specified) of receiving the Report, submit a Proposal to Buyer. The Proposal will include, but not be limited to the name of the company to perform the expansion or replacement; provisions for payment, including retests; and a projected completion date for corrective measures. Within __5__ DAYS of receiving Seller's Proposal, or if no Proposal is provided within the stated time, Buyer will notify Seller in writing of Buyer's choice to:

1. Agree to the terms of the Proposal, accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement, OR
3. Accept the Property and the existing system and agree to the RELEASE in Paragraph 28 of this Agreement. If required by any mortgage lender or any governmental authority, Buyer will correct the defects before settlement or within the time required by the mortgage lender and/or governmental authority, at Buyer's sole expense, with permission and access to the Property given by Seller, which may not be unreasonably withheld. If Seller denies Buyer permission and/or access to correct the defects, Buyer may, within __5__ DAYS of Seller's denial, terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

If Buyer fails to respond within the time stated in Paragraph 13(C) or fails to terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement.

**14. TITLES, SURVEYS AND COSTS (9-18)**

(A) Within _____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will order from a reputable title company for delivery to Seller a comprehensive title report on the Property. Upon receipt, Buyer will deliver a free copy of the title report to Seller.

(B) Buyer is encouraged to obtain an owner's title insurance policy to protect Buyer. An owner's title insurance policy is different from a lender's title insurance policy, which will not protect Buyer from claims and attacks on the title. Owner's title insurance policies come in standard and enhanced versions; Buyer should consult with a title insurance agent about Buyer's options. Buyer agrees to release and discharge any and all claims and losses against Broker should Buyer neglect to obtain an owner's title insurance policy.

(C) Buyer will pay for the following: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender; (4) Buyer's customary settlement costs and accruals.

(D) Any survey or surveys required by the title insurance company or the abstracting company for preparing an adequate legal description of the Property (or the correction thereof) will be obtained and paid for by Seller. Any survey or surveys desired by Buyer or required by the mortgage lender will be obtained and paid for by Buyer.

(E) The Property will be conveyed with good and marketable title that is insurable by a reputable title insurance company at the regular rates, free and clear of all liens, encumbrances, and easements, excepting however the following: existing deed restrictions; historic preservation restrictions or ordinances; building restrictions; ordinances; easements of roads; easements visible upon the ground; easements of record; and privileges or rights of public service companies, if any.

(F) In the event of a change in Seller's financial status affecting Seller's ability to convey title to the Property on or before the Settlement Date, or any extension thereof, Seller shall promptly notify Buyer in writing. A change in financial status includes, but is not limited to, Seller filing bankruptcy; filing of a foreclosure lawsuit against the Property; entry of a monetary judgment against Seller; notice of public tax sale affecting the Property; and Seller learning that the sale price of the Property is no longer sufficient to satisfy all liens and encumbrances against the Property.

(G) If Seller is unable to give good and marketable title that is insurable by a reputable title insurance company at the regular rates, as specified in Paragraph 14(E), Buyer may terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement. Upon termination, Seller will reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and for those items specified in Paragraph 14(C) items (1), (2), (3) and in Paragraph 14(D).

(H) Oil, gas, mineral, or other rights of this Property may have been previously conveyed or leased, and Sellers make no representation about the status of those rights unless indicated elsewhere in this Agreement.

☐ **Oil, Gas and Mineral Rights Addendum (PAR Form OGM) is attached to and made part of this Agreement.**

(I) **COAL NOTICE (Where Applicable)**

THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence resulting from coal mining operations, and that the property described herein may be protected from damage due to mine subsidence by a private contract with the owners of the economic interests in the coal. This acknowledgement is made for the purpose of complying with the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27, 1966." Buyer agrees to sign the deed from Seller which deed will contain the aforesaid provision.

(J) The Property is not a "recreational cabin" as defined in the Pennsylvania Construction Code Act unless otherwise stated here: _____

Buyer Initials: [initials]          ASR Page 9 of 14          Seller Initials: [initials]

(K) 1.  This property is not subject to a Private Transfer Fee Obligation unless otherwise stated here _____
☐ **Private Transfer Fee Addendum (PAR Form PTF) is attached to and made part of this Agreement.**

2.  **Notices Regarding Private Transfer Fees:** In Pennsylvania, Private Transfer Fees are defined and regulated in the Private Transfer Fee Obligation Act (Act 1 of 2011, 68 Pa.C.S. §§ 8101, et. seq.), which defines a Private Transfer Fee as "a fee that is payable upon the transfer of an interest in real property, or payable for the right to make or accept the transfer, if the obligation to pay the fee or charge runs with title to the property or otherwise binds subsequent owners of property, regardless of whether the fee or charge is a fixed amount or is determined as a percentage of the value of the property, the purchase price or other consideration given for the transfer." A Private Transfer Fee must be properly recorded to be binding, and sellers must disclose the existence of the fees to prospective buyers. Where a Private Transfer Fee is not properly recorded or disclosed, the Act gives certain rights and protections to buyers.

## 15. NOTICES, ASSESSMENTS AND MUNICIPAL REQUIREMENTS (9-18)

(A) In the event any notices of public and/or private assessments as described in Paragraph 10(F) (excluding assessed value) are received after Seller has signed this Agreement and before settlement, Seller will within __5__ DAYS of receiving the notices and/or assessments provide a copy of the notices and/or assessments to Buyer and will notify Buyer in writing that Seller will:
1.  Fully comply with the notices and/or assessments, at Seller's expense, before settlement. If Seller fully complies with the notices and/or assessments, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
2.  Not comply with the notices and/or assessments. If Seller chooses not to comply with the notices and/or assessments, or **fails within the stated time to notify Buyer whether Seller will comply,** Buyer will notify Seller in writing within __5__ DAYS that Buyer will:
    a.  Comply with the notices and/or assessments at Buyer's expense, accept the Property, and agree to the RELEASE in Paragraph 28 of this Agreement, OR
    b.  Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.
    **If Buyer fails to respond** within the time stated in Paragraph 15(A)(2) **or fails to terminate** this Agreement by written notice to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.

(B) If required by law, within __30__ DAYS from the Execution Date of this Agreement, but in no case later than __15__ DAYS prior to Settlement Date, Seller will order at Seller's expense a certification from the appropriate municipal department(s) disclosing notice of any uncorrected violations of zoning, housing, building, safety or fire ordinances and/or a certificate permitting occupancy of the Property. If Buyer receives a notice of any required repairs/improvements, Buyer will promptly deliver a copy of the notice to Seller.
1.  Within __5__ DAYS of receiving notice from the municipality that repairs/improvements are required, Seller will deliver a copy of the notice to Buyer and notify Buyer in writing that Seller will:
    a.  Make the required repairs/improvements to the satisfaction of the municipality. If Seller makes the required repairs/improvements, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
    b.  Not make the required repairs/improvements. If Seller chooses not to make the required repairs/improvements, Seller will notify Seller in writing within __5__ DAYS that Buyer will:
        (1) Accept a temporary access certificate or temporary use and occupancy certificate, agree to the RELEASE in Paragraph 28 of this Agreement and make the repairs at Buyer's expense after settlement, OR
        (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.
    **If Buyer fails to respond** within the time stated in Paragraph 15(B)(1)(b) **or fails to terminate** this Agreement by written notice to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement, **and Buyer accepts the responsibility to perform the repairs/improvements** according to the terms of the notice provided by the municipality.
3.  If repairs/improvements are required and Seller fails to provide a copy of the notice to Buyer as required in this Paragraph, Seller will perform all repairs/improvements as required by the notice at Seller's expense. **Paragraph 15(B)(3) will survive settlement.**

## 16. CONDOMINIUM/PLANNED COMMUNITY (HOMEOWNER ASSOCIATIONS) NOTICE (9-16)

(A) Property is NOT a Condominium or part of a Planned Community unless checked below.
☐ CONDOMINIUM. The Property is a unit of a condominium that is primarily run by a unit owners' association. Section 3407 of the Uniform Condominium Act of Pennsylvania requires Seller to furnish Buyer with a Certificate of Resale and copies of the condominium declaration (other than plats and plans), the bylaws and the rules and regulations of the association.
☐ PLANNED COMMUNITY (HOMEOWNER ASSOCIATION). The Property is part of a planned community as defined by the Uniform Planned Community Act. Section 5407(a) of the Act requires Seller to furnish Buyer with a copy of the declaration (other than plats and plans), the bylaws, the rules and regulations of the association, and a Certificate containing the provisions set forth in Section 5407(a) of the Act.

(B) **THE FOLLOWING APPLIES TO INITIAL SALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A PLANNED COMMUNITY:**
If this is the first sale of the property after creation of the condominium or planned community (therefore a sale by the Declarant), Seller shall furnish Buyer with a Public Offering Statement no later than the date Buyer executes this Agreement. Buyer may void this Agreement within 15 days (if a condominium) or within 7 days (if part of a planned community) after receipt of the Public

Buyer Initials: [A]                 ASR Page 10 of 14                 Seller Initials: [MEG]

Offering Statement or any amendment to the Statement that materially and adversely affects Buyer. Upon Buyer declaring this Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.

(C) **THE FOLLOWING APPLIES TO RESALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A PLANNED COMMUNITY:**

1. Within ___15___ DAYS from the Execution Date of this Agreement, Seller, at Seller's expense, will request from the association a Certificate of Resale and any other documents necessary to enable Seller to comply with the relevant Act. The Act provides that the association is required to provide these documents within 10 days of Seller's request.

2. Seller will promptly deliver to Buyer all documents received from the association. Under the Act, Seller is not liable to Buyer for the failure of the association to provide the Certificate in a timely manner or for any incorrect information provided by the association in the Certificate.

3. The Act provides that Buyer may declare this Agreement VOID at any time before Buyer receives the association documents and for 5 days after receipt, OR until settlement, whichever occurs first. Buyer's notice to Seller must be in writing, upon Buyer declaring this Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.

4. If the association has the right to buy the Property (right of first refusal), and the association exercises that right, Seller will reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of the Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender.

## 17. REAL ESTATE TAXES AND ASSESSED VALUE (4-14)

In Pennsylvania, taxing authorities (school districts and municipalities) and property owners may appeal the assessed value of a property at the time of sale, or at any time thereafter. A successful appeal by a taxing authority may result in a higher assessed value for the property and an increase in property taxes. Also, periodic county-wide property reassessments may change the assessed value of the property and result in a change in property tax.

## 18. MAINTENANCE AND RISK OF LOSS (1-14)

(A) Seller will maintain the Property (including, but not limited to, structures, grounds, fixtures, appliances, and personal property) specifically listed in this Agreement in its present condition, normal wear and tear excepted.

(B) If any part of the Property included in the sale fails before settlement, Seller will:
1. Repair or replace that part of the Property before settlement, OR
2. Provide prompt written notice to Buyer of Seller's decision to:
   a. Credit Buyer at settlement for the fair market value of the failed part of the Property, as acceptable to the mortgage lender, if any, OR
   b. Not repair or replace the failed part of the Property, and not credit Buyer at settlement for the fair market value of the failed part of the Property.
3. If Seller does not repair or replace the failed part of the Property or agree to credit Buyer for its fair market value, **or if Seller fails to notify Buyer of Seller's choice,** Buyer will notify Seller in writing within ___5___ DAYS or before Settlement Date, whichever is earlier, that Buyer will:
   a. Accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
   b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

   **If Buyer fails to respond** within the time stated in Paragraph 18(B)(3) **or fails to terminate** this Agreement by written notice to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.

(C) Seller bears the risk of loss from fire or other casualties until settlement. If any property included in this sale is destroyed and not replaced prior to settlement, Buyer will:
1. Accept the Property in its then current condition together with the proceeds of any insurance recovery obtainable by Seller, OR
2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

## 19. HOME WARRANTIES (1-10)

At or before settlement, either party may purchase a home warranty for the Property from a third-party vendor. Buyer and Seller understand that a home warranty for the Property does not alter any disclosure requirements of Seller, will not cover or warrant any pre-existing defects of the Property, and will not alter, waive or extend any provisions of this Agreement regarding inspections or certifications that Buyer has elected or waived as part of this Agreement. Buyer and Seller understand that a broker who recommends a home warranty may have a business relationship with the home warranty company that provides a financial benefit to the broker.

## 20. RECORDING (9-05)

This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record. If Buyer causes or permits this Agreement to be recorded, Seller may elect to treat such act as a default of this Agreement.

## 21. ASSIGNMENT (1-10)

This Agreement is binding upon the parties, their heirs, personal representatives, guardians and successors, and to the extent assignable, on the assigns of the parties hereto. Buyer will not transfer or assign this Agreement without the written consent of Seller unless otherwise stated in this Agreement. Assignment of this Agreement may result in additional transfer taxes.

## 22. GOVERNING LAW, VENUE AND PERSONAL JURISDICTION (9-05)

(A) The validity and construction of this Agreement, and the rights and duties of the parties, will be governed in accordance with the laws of the Commonwealth of Pennsylvania.

(B) The parties agree that any dispute, controversy or claim arising under or in connection with this Agreement or its performance by either party submitted to a court shall be filed exclusively by and in the state or federal courts sitting in the Commonwealth of Pennsylvania.

## 23. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 (FIRPTA) (1-17)

The disposition of a U.S. real property interest by a foreign person (the transferor) is subject to the Foreign Investment in Real Property Tax Act of 1980 (FIRPTA) income tax withholding. FIRPTA authorized the United States to tax foreign persons on dispositions of U.S. real property interests. This includes but is not limited to a sale or exchange, liquidation, redemption, gift, transfers, etc. Persons purchasing U.S. real property interests (transferee) from foreign persons, certain purchasers' agents, and settlement officers are required to withhold up to 15 percent of the amount realized (special rules for foreign corporations). Withholding is intended to ensure U.S. taxation of gains realized on disposition of such interests. The transferee/Buyer is the withholding agent. If you are the transferee/Buyer you must find out if the transferor is a foreign person as defined by the Act. If the transferor is a foreign person and you fail to withhold, you may be held liable for the tax.

## 24. NOTICE REGARDING CONVICTED SEX OFFENDERS (MEGAN'S LAW) (4-14)

The Pennsylvania General Assembly has passed legislation (often referred to as "Megan's Law," 42 Pa.C.S. § 9791 et seq.) providing for community notification of the presence of certain convicted sex offenders. **Buyers are encouraged to contact the municipal police department or the Pennsylvania State Police** for information relating to the presence of sex offenders near a particular property, or to check the information on the Pennsylvania State Police Web site at www.pameganslaw.state.pa.us.

## 25. REPRESENTATIONS (1-10)

(A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their licensees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement. This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This Agreement will not be altered, amended, changed or modified except in writing executed by the parties.

(B) Unless otherwise stated in this Agreement, **Buyer has inspected the Property** (including fixtures and any personal property specifically listed herein) **before signing this Agreement or has waived the right to do so, and agrees to purchase the Property IN ITS PRESENT CONDITION,** subject to inspection contingencies elected in this Agreement. Buyer acknowledges that Brokers, their licensees, employees, officers or partners have not made an independent examination or determination of the structural soundness of the Property, the age or condition of the components, environmental conditions, the permitted uses, nor of conditions existing in the locale where the Property is situated; nor have they made a mechanical inspection of any of the systems contained therein.

(C) Any repairs required by this Agreement will be completed in a workmanlike manner.

(D) Broker(s) have provided or may provide services to assist unrepresented parties in complying with this Agreement.

## 26. DEFAULT, TERMINATION AND RETURN OF DEPOSITS (4-14)

(A) Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, Buyer will be entitled to a return of all deposit monies paid on account of Purchase Price pursuant to the terms of Paragraph 26(B), and this Agreement will be VOID. Termination of this Agreement may occur for other reasons giving rise to claims by Buyer and/or Seller for the deposit monies.

(B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:
1. If this Agreement is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written agreement signed by both parties is evidence that there is no dispute regarding deposit monies.
2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing Broker how to distribute some or all of the deposit monies.
3. According to the terms of a final order of court.
4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the deposit monies if there is a dispute between the parties that is not resolved. (See Paragraph 26(C))

(C) Buyer and Seller agree that if there is a dispute over the entitlement to deposit monies that is unresolved __5__ days (180 if not specified) after the Settlement Date stated in Paragraph 4(A) (or any written extensions thereof) or following termination of this Agreement, whichever is earlier, then the Broker holding the deposit monies will, within 30 days of receipt of Buyer's written request, distribute the deposit monies to Buyer unless the Broker is in receipt of verifiable written notice that the dispute is the subject of litigation or mediation. If Broker has received verifiable written notice of litigation prior to the receipt of Buyer's request for distribution, Broker will continue to hold the deposit monies until receipt of a written distribution agreement between Buyer and Seller or a final court order. Buyer and Seller are advised to initiate litigation for any portion of the deposit monies prior to any distribution made by Broker pursuant to this paragraph. Buyer and Seller agree that the distribution of deposit monies based upon the passage of time does not legally determine entitlement to deposit monies, and that the parties maintain their legal rights to pursue litigation even after a distribution is made.

Buyer Initials: _____   ASR Page 12 of 14   Seller Initials: _____

(D) Buyer and Seller agree that a Broker who holds or distributes deposit monies pursuant to the terms of Paragraph 26 or Pennsylvania law will not be liable. Buyer and Seller agree that if any Broker or affiliated licensee is named in litigation regarding deposit monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by the party naming them in litigation.

(E) Seller has the option of retaining all sums paid by Buyer, including the deposit monies, should Buyer:
   1. Fail to make any additional payments as specified in Paragraph 2, OR
   2. Furnish false or incomplete information to Seller, Broker(s), or any other party identified in this Agreement concerning Buyer's legal or financial status, OR
   3. Violate or fail to fulfill and perform any other terms or conditions of this Agreement.

(F) **Unless otherwise checked in Paragraph 26(G),** Seller may elect to retain those sums paid by Buyer, including deposit monies,
   1. On account of purchase price, OR
   2. As monies to be applied to Seller's damages, OR
   3. As liquidated damages for such default.

(G) ☑ **SELLER IS LIMITED TO RETAINING SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS LIQUIDATED DAMAGES.**

(H) If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to Paragraph 26(F) or (G), Buyer and Seller are released from further liability or obligation and this Agreement is VOID.

(I) Brokers and licensees are not responsible for unpaid deposits.

27. **MEDIATION (1-10)**
Buyer and Seller will submit all disputes or claims that arise from this Agreement, including disputes and claims over deposit monies, to mediation. Mediation will be conducted in accordance with the Rules and Procedures of the Home Sellers Home Buyers Dispute Resolution System, unless it is not available, in which case Buyer and Seller will mediate according to the terms of the mediation system offered or endorsed by the local Association of Realtors®. Mediation fees, contained in the mediator's fee schedule, will be divided equally among the parties and will be paid before the mediation conference. This mediation process must be concluded before any party to the dispute may initiate legal proceedings in any courtroom, with the exception of filing a summons if it is necessary to stop any statute of limitations from expiring. Any agreement reached through mediation and signed by the parties will be binding. Any agreement to mediate disputes or claims arising from this Agreement will survive settlement.

28. **RELEASE (9-05)**
**Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or through them, from any and all claims, losses or demands,** including, but not limited to, personal injury and property damage and all of the consequences thereof, whether known or not, which may arise from the presence of termites or other wood-boring insects, radon, lead-based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage disposal system or deficiencies in the on-site water service system, or any defects or conditions on the Property. Should Seller be in default under the terms of this Agreement or in violation of any Seller disclosure law or regulation, this release does not deprive Buyer of any right to pursue any remedies that may be available under law or equity. This release will survive settlement.

29. **REAL ESTATE RECOVERY FUND (4-18)**
A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real estate licensee (or a licensee's affiliates) owing to fraud, misrepresentation, or deceit in a real estate transaction and who have been unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-3658.

30. **COMMUNICATIONS WITH BUYER AND/OR SELLER (1-10)**
(A) If Buyer is obtaining mortgage financing, Buyer shall promptly deliver to Broker for Buyer, if any, a copy of all Loan Estimate(s) and Closing Disclosure(s) upon receipt.

(B) Wherever this Agreement contains a provision that requires or allows communication/delivery to a Buyer, that provision shall be satisfied by communication/delivery to the Broker for Buyer, if any, **except for documents required to be delivered pursuant to Paragraph 16.** If there is no Broker for Buyer, those provisions may be satisfied only by communication/delivery being made directly to the Buyer, unless otherwise agreed to by the parties. Wherever this Agreement contains a provision that requires or allows communication/delivery to a Seller, that provision shall be satisfied by communication/delivery to the Broker for Seller, if any. If there is no Broker for Seller, those provisions may be satisfied only by communication/delivery being made directly to the Seller, unless otherwise agreed to by the parties.

dotloop signature verification: dlp.co/my/no-a (sel)

**31. HEADINGS (4-14)**

The section and paragraph headings in this Agreement are for convenience only and are not intended to indicate all of the matter in the sections which follow them. They shall have no effect whatsoever in determining the rights, obligations or intent of the parties.

**32. SPECIAL CLAUSES (1-10)**

(A) **The following are attached to and made part of this Agreement if checked:**
- ☐ Sale & Settlement of Other Property Contingency Addendum (PAR Form SSP)
- ☐ Sale & Settlement of Other Property Contingency with Right to Continue Marketing Addendum (PAR Form SSPCM)
- ☐ Sale & Settlement of Other Property Contingency with Timed Kickout Addendum (PAR Form SSPTKO)
- ☐ Settlement of Other Property Contingency Addendum (PAR Form SOP)
- ☑ Appraisal Contingency Addendum (PAR Form ACA)
- ☐ Short Sale Addendum (PAR Form SHS)
- ☐ _____
- ☐ _____
- ☐ _____

(B) **Additional Terms:**

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Buyer and Seller acknowledge receipt of a copy of this Agreement at the time of signing.

**This Agreement may be executed in one or more counterparts**, each of which shall be deemed to be an original and which counterparts together shall constitute one and the same Agreement of the Parties.

**NOTICE TO PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT.** Parties to this transaction are advised to consult a Pennsylvania real estate attorney before signing if they desire legal advice.

Return of this Agreement, and any addenda and amendments, including **return by electronic transmission**, bearing the signatures of all parties, constitutes acceptance by the parties.

[ _AVJR_ ] Buyer has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.

[ _AVJR_ ] Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.

[ _AVJR_ ] Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit money) before signing this Agreement.

[ _AVJR_ ] Buyer has received the Lead-Based Paint Hazards Disclosure, which is attached to this Agreement of Sale. Buyer has received the pamphlet Protect Your Family from Lead in Your Home (for properties built prior to 1978).

BUYER [ _signature_ ]                          DATE _4/28/19_
BUYER [ _signature_ ]                          DATE _____
BUYER [                  ]                      DATE _____

Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code § 35.336.
Seller has received a statement of Seller's estimated closing costs before signing this Agreement.

SELLER [ _Michael E Graham_   dotloop verified  ]   DATE _____
                              04/26/19 10:01 PM EDT
                              GRV4-ZTR-RDAY-DXTA
SELLER [                  ]                      DATE _____
SELLER [                  ]                      DATE _____

# APPRAISAL CONTINGENCY ADDENDUM TO AGREEMENT OF SALE

ACA

*This form is recommended and approved for, but not restricted to, the members of the Pennsylvania Association of Realtors® (PAR).*

**PROPERTY** _28 Miller Lane_

**SELLER** _Michael Graham_

**BUYER** _Daryl L Vaughn Sr_

1. The Agreement of Sale is contingent upon the Property being appraised (in a manner that is acceptable to the underwriter if Buyer is obtaining financing) at a value that is equal to or higher than:

   ☐ $ _____

   ☒ The Purchase Price

2. Contingency Period _____ days (30 if not specified) from the Execution Date of the Agreement.

   **Within the Contingency Period**, Buyer may obtain an appraisal of the Property from a Pennsylvania certified appraiser. If Buyer is obtaining financing, the appraisal shall be performed by a Pennsylvania certified appraiser selected by the lender to whom Buyer has made application for financing. If Buyer is not obtaining financing, the appraisal shall be performed by a Pennsylvania certified appraiser selected by Buyer.

   (A) If the terms of Paragraph 1 are satisfied, or if the appraisal is not completed within the Contingency Period, Buyer **accepts the Property** and agrees to the terms of the RELEASE paragraph of the Agreement of Sale.

   (B) If the terms of Paragraph 1 are not satisfied, Buyer will deliver a copy of the appraisal report to Seller, and Buyer will, **within the Contingency Period**:

      1. **Terminate the Agreement of Sale** by written notice to Seller, with all deposit monies returned to Buyer according to the terms of the Agreement of Sale, OR

      2. Enter into a mutually acceptable written agreement with Seller.

3. If Buyer does not terminate the Agreement of Sale or enter into a mutually acceptable written agreement with Seller **within the Contingency Period**, Buyer waives this contingency.

**All other terms and conditions of the Agreement of Sale remain unchanged and in full force and effect.**

| | | |
|---|---|---|
| **BUYER** _D H L Vaughn Sr_ | **DATE** _4/28/19_ | |
| **BUYER** | **DATE** | |
| **BUYER** | **DATE** | |
| **SELLER** _Michael E. Graham_  dotloop verified  04/28/19 10:07 PM EDT  U1OZ-OQPI-NVK2-OXMD | **DATE** | |
| **SELLER** | **DATE** | |
| **SELLER** | **DATE** | |

Pennsylvania Association of Realtors®

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2015

dotloop signature verification: dtlp.us/Zsha-F67z-fAKQ

**DEPOSIT MONEY NOTICE TO BUYER (Prior to Delivery to Listing Broker)**                **DMN**
**(For cooperative sales when Broker for Seller is holding deposit money)**
This form, recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of REALTORS® (PAR)

**PROPERTY** 28 Alder Lane, Levittown, PA 19055
**SELLER** Michael E. Graham
**BUYER** Angel L. Velazquez Jr
**DATE OF AGREEMENT** 04/28/2019
**LISTING BROKER (BROKER FOR SELLER)** Keller Williams Real Estate
**SELLING BROKER** Keller Williams Real Estate

1. Listing Broker is a Pennsylvania licensed real estate broker who is required to hold your sales deposit in escrow.
2. Selling Broker is accepting your deposit on behalf of and for transfer to the Listing Broker.
3. If the deposit is in the form of a check, the check must be made payable to the Listing Broker.
4. The Broker holding deposits will retain deposits in escrow until consummation or termination of the Agreement of Sale in conformity with all applicable laws and regulations.

**WITNESS** _____    **BUYER** _____
**WITNESS** _____    **BUYER** _____

Pennsylvania Association of REALTORS®

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2005
12/05

Office  2154930900
Mobile  2679020185
xsnm7@comcast.net

*docusign signature verification*    *Home*
Buyer's Estimated Closing Cost Report courtesy of: **Kelly Krimmel**

# Buyer's Estimated Closing Cost

|  |  |  |  |
|---|---|---|---|
|  |  |  | 5/22/2019 |
| Buyer: | Angel L. Velazquez Jr | Settlement Date: | $192,500.00 |
| Property: | 28 ALDER LN | Purchase Price: | $6,737.50 |
| Township / Borough: | Bristol Twp | Down Payment ( 3.500% ) : | $185,762.50 |
| County: | Bucks County, PA | Base Mortgage: | $3,250.84 |
| Loan: | FHA 203(b) - 30 year | MIP Financed: |  |
| Interest Rate: | 4.25% |  |  |

## CLOSING COSTS

| | | | |
|---|---|---|---|
| | | | $1,925.00 |
| Mortgage Origination Fee (POC) : (.000% ) : | $950.00 | Transfer Tax (1.000%) : | $60.00 |
| Mortgage Discount Points (.000% ) : | $0.00 | Deed Recording Fee: | $95.00 |
| Appraisal: (POC) | $375.00 | Mortgage Recording Fee: | $35.00 |
| Credit Report: | $25.00 | Notary Fee: | $1,000.00 |
| Mortgage Insurance: | $3,250.84 | Homeowners Insurance: (POC) | $500.00 |
| Documentation Preparation: | $200.00 | Home Inspection (POC) : | $125.00 |
| Underwriting: | $0.00 | Termite / Pest Inspection (POC) : | $125.00 |
| Flood Certification: | $25.00 | Radon Inspection: (POC) : | $0.00 |
| Courier: | $0.00 | Water Inspection (POC) : | $0.00 |
| Wire: | $0.00 | Septic Inspection (POC) : | $0.00 |
| Escrow Waiver: | $0.00 | Attorney Fee (POC) : | $3,865.00 |
| Mortgage Interest to end of month (10 days): | $216.30 | Other Closing Costs: | $3,865.00 |
| **Mortgage Origination Costs:** | **$5,042.14** | | |
| | | | |
| Title Insurance Policy (Enhanced Sale): | $1,647.44 | | |
| Policy Endorsements: | $150.00 | | |
| Survey: | $0.00 | | |
| **Title Insurance Costs:** | **$1,797.44** | | |
| | | | |
| **Total Closing Costs:** | | | **$10,704.58** |

## ESCROWS

| | |
|---|---|
| County Tax (6 months): | $180.94 |
| Municipal Tax (6 months): | $177.46 |
| School Tax (12 months): | $3,258.21 |
| Homeowners Insurance (2 months): | $166.67 |
| Condo / HOA Fee (0 months): | $0.00 |
| Mortgage Insurance (2 months): | $263.16 |
| **Total Escrows:** | **$4,046.44** |

## BUYER REIMBURSMENTS TO SELLER

| | |
|---|---|
| County Tax (7 months 10 days): | $222.08 |
| Municipal Tax (7 months 10 days): | $217.81 |
| School Tax (1 month 9 days): | $357.06 |
| Condo / HOA Fee (0 months 10 days): | $0.00 |
| **Total Reimbursements to Seller:** | **$796.95** |

## TRANSACTION SUMMARY

| | |
|---|---|
| Purchase Price: | $192,500.00 |
| Closing Costs: | $10,704.58 |
| Lender Escrows: | $4,046.44 |
| Reimbursements to Seller: | $796.95 |
| **Total Acquisition Costs:** | **$208,047.97** |
| Base Mortgage: | ($185,762.50) |
| MIP Financed: | ($3,250.84) |
| **Total Mortgage Amount:** | **($189,013.34)** |
| Seller Assist ( 5.000% ) : | ($9,625.00) |
| **Estimated Cash Needed to Purchase:** | **$9,409.63** |
| Earnest Deposit: | ($1,000.00) |
| Prepaid Services: | ($3,075.00) |
| **Estimated Cash Needed at Settlement:** | **$5,334.63** |

## ONGOING MONTHLY PAYMENTS

| | |
|---|---|
| Principal and Interest: | $929.83 |
| Real Estate Taxes: | $331.25 |
| Homeowners Insurance: | $83.33 |
| Mortgage Insurance: | $131.58 |
| Condo / HOA Fee: | $0.00 |
| **Estimated Monthly Payment:** | **$1,475.99** |

**Notice to Buyer:** Buyer is encouraged to obtain an owner's title insurance policy to protect the Buyer. An owner's title insurance policy is different from a lender's insurance policy, which will not protect the Buyer from claims and attacks on the title. Owner's title insurance policies come in standard and enhanced versions; the Buyer should consult with a title insurance agent about Buyer's options.

The above figures are estimated settlement costs only. These will be adjusted as of the date of the final settlement, if necessary. The estimated monthly payment may be higher or lower because of the mortgage interest rate, type of loan and/or length of term. Buyer should consult the mortgage lender regarding exact mortgage costs and terms. I (we) acknowledge receipt of a copy of this information.

Buyer _____

Date _____

Buyer _____

Date _____

## BUYER'S FINANCIAL INFORMATION

**BFI**

This form has been created and approved for use but was not created or used by the members of the Pennsylvania Association of Realtors® (PAR)

BUYER 1 Angel L. Velazquez Jr
ADDRESS  8590 New Falls Rd   Apt F3
         Levittwin, Pa 19057
BUYER 2
ADDRESS

**The following information is requested to determine the buyer's financial ability to purchase the property.**

1. Will you occupy the premises?  ☒ Yes  ☐ No
2. Have you in the last 7 years declared bankruptcy, suffered foreclosure, had an account for collection action, had a history of late payments, or had any legal action affecting ability to finance?  ☐ Yes  ☒ No
   If yes, explain.
3. Is any part of purchase price or settlement costs being obtained from a source other than shown below?  ☐ Yes  ☒ No
   If yes, state the source of the funds and attach documentation showing proof of availability.
4. Do you need to sell any other real estate in order to purchase this property?  ☐ Yes  ☒ No
   If yes, explain
5. Have you at any time on or since January 1, 1998, been obligated to pay support under an order that is on record in any Pennsylvania county?  ☐ Yes  ☒ No
   If yes, list the county and the Domestic Relations File or Docket Number:
6. Are there any arrearages for alimony or child/spousal support due in this, or any other, jurisdiction?  ☐ Yes  ☒ No
   If yes, explain:
7. Are you currently going through a divorce or separation from your spouse?  ☐ Yes  ☒ No
   If yes, has a separation agreement or property settlement agreement been signed?  ☐ Yes  ☐ No

**For a purchase involving mortgage financing, disclose at least a minimum net worth of liquid assets in the amount of the down payment plus settlement costs. For cash sales, disclose at least a minimum amount equal to the purchase price plus settlement costs.**

| ASSETS (Bank accounts, stocks, etc.) | **BUYER 1** | **BUYER 2** |
|---|---|---|
| Checking | $ 10,000 | $ |
|  | $ | $ |
|  | $ | $ |
|  | $ | $ |
|  | $ | $ |
| TOTAL | $ 10,000 | $ |

**The information in this section must be provided if Buyer(s) require a mortgage loan.**

| LIABILITIES (list all liabilities, including alimony or child/spousal support, if any) | **BUYER 1** | | **BUYER 2** | |
|---|---|---|---|---|
|  | Balance | Per Month | Balance | Per Month |
| Motorcycle | $ 18,000 | $ 264.00 | $ | $ |
| Credit Card | $ 10,000 | $ 280.00 | $ | $ |
| School Loan | $ 6,000 | $ 140.00 | $ | $ |
|  | $ | $ | $ | $ |
|  | $ | $ | $ | $ |

**Real Estate Currently Owned** (First Property)          **Real Estate Currently Owned** (Second Property)

Address _____          Address _____

Value $ _____ Mo. Payment $ _____          Value $ _____ Mo. Payment $ _____
Mortgage/Equity Loan Balance $ _____          Mortgage/Equity Loan Balance $ _____

Buyer Initials: [AV] [  ]          **BFI Page 1 of 2**

Pennsylvania Association of Realtors®

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2016

The information in this section must be provided if Buyer(s) require a mortgage loan, but only to the extent necessary to prove the ability to qualify for the mortgage loan.

**EMPLOYMENT INFORMATION -- BUYER 1**

Current Employer: Set Rite Corp
Address: 5790 Bristol Pike
Bristol, Pa. 19007
Occupation: Installer
Years at job: 7

Prior Employer: Aqua R R
Address: Pixel Brick Rd
Bristol Pa 19007
Occupation: loader
Years at job: 6

**EMPLOYMENT INFORMATION -- BUYER 2**

Current Employer: _____
Address: _____

Occupation: _____
Years at job: _____

Prior Employer: _____
Address: _____

Occupation: _____
Years at job: _____

| ANNUAL INCOME | | **BUYER 1** |
|---|---|---|
| Basic Salary | $ | 52,000 |
| Overtime | $ | 21,200 |
| Adjusted Gross Income (if self-employed) | $ | |
| Bonuses | $ | |
| Commissions | $ | |
| Dividends | $ | |
| Interest | $ | |
| | $ | |
| | $ | |
| TOTAL | $ | 23,000 |

| ANNUAL INCOME | | **BUYER 2** |
|---|---|---|
| Basic Salary | $ | |
| Overtime | $ | |
| Adjusted Gross Income (if self-employed) | $ | |
| Bonuses | $ | |
| Commissions | $ | |
| Dividends | $ | |
| Interest | $ | |
| | $ | |
| | $ | |
| TOTAL | $ | |

**COMBINED TOTAL INCOME** $ 23,000

ADDITIONAL INFORMATION:

Buyer(s) affirms that the above information is true and correct. Buyer(s) understands that the information may be used as a basis for the acceptance or rejection of an offer by the seller. Buyer(s) acknowledges that failure to provide truthful and correct information may result in the forfeiture of any deposits made by Buyer(s) and may subject Buyer(s) to other financial loss or penalties.

Buyer(s) expressly authorizes Broker to provide the information contained in this form and any reports or information obtained by Broker for the purposes stated above, to the seller(s) and cooperating broker(s) involved in this transaction or any related transaction. BUYER(S) UNDERSTANDS THAT BROKER HAS NO CONTROL OVER THE USE OF ANY INFORMATION DISCLOSED TO A THIRD PARTY; BUYER(S) AGREES TO RELEASE AND HOLD BROKER HARMLESS FROM ANY AND ALL LIABILITY FOR ANY MISUSE OR SUBSEQUENT DISCLOSURE BY ANY THIRD PARTY OF THE INFORMATION OR REPORTS DISCLOSED BY BROKER PURSUANT TO THE TERMS OF THIS AUTHORIZATION.

Buyer's signature serves as an acknowledgement of receipt of a copy of this financial information sheet.

BUYER _____

BUYER _____

## SELLER'S PROPERTY DISCLOSURE STATEMENT                                    SPD

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

**PROPERTY** 26 Adler Lane, Levittown, PA 19055

**SELLER** Michael L. Graham

### INFORMATION REGARDING THE REAL ESTATE SELLER DISCLOSURE LAW

Generally speaking, the Real Estate Seller Disclosure Law (68 P.S. §7301 et seq.) requires that before an agreement of sale is signed, the seller in a residential real estate transfer must make certain disclosures regarding the property to potential buyers in a form defined by the law. A residential real estate transfer is defined as a sale, exchange, installment sales contract, lease with an option to buy, grant or other transfer of an interest in real property where **NOT LESS THAN ONE AND NOT MORE THAN FOUR RESIDENTIAL DWELLING UNITS** are involved. The Law defines a number of exceptions where the disclosures do not have to be made:

1.   Transfers that are the result of a court order.
2.   Transfers to a mortgage lender that result from a buyer's default and subsequent foreclosure sales that result from default.
3.   Transfers from a co-owner to one or more other co-owners.
4.   Transfers made to a spouse or direct descendant.
5.   Transfers between spouses that result from divorce, legal separation, or property settlement.
6.   Transfers by a corporation, partnership or other association to its shareholders, partners or other equity owners as part of a plan of liquidation.
7.   Transfer of a property to be demolished or converted to non-residential use.
8.   Transfer of unimproved real property.
9.   Transfers by a fiduciary during the administration of a decedent estate, guardianship, conservatorship or trust.
10.  Transfers of new construction that has never been occupied when:
     a.   The buyer has received a one-year warranty covering the construction;
     b.   The building has been inspected for compliance with the applicable building code or, if none, a nationally recognized model building code; and
     c.   A certificate of occupancy or a certificate of code compliance has been issued for the dwelling.

In addition to these exceptions, disclosures for condominiums and cooperatives are limited to the seller's particular unit(s). Disclosures regarding common areas or facilities are not required, as those elements are already addressed in the laws that govern the resale of condominium and cooperative interests.

While the Law requires certain disclosures, this statement includes disclosures beyond the basic requirements of the Law in an effort to assist sellers in complying with seller disclosure requirements and to assist buyers in evaluating the property being considered. Sellers who wish to see or use the basic disclosure form can find the form on the Web site of the Pennsylvania State Real Estate Commission.

This Statement discloses Seller's knowledge of the condition of the property as of the date signed by Seller and **is not a substitute for any inspections or warranties** that Buyer may wish to obtain. This Statement is not a warranty of any kind by Seller or a warranty or representation by any listing real estate broker, any selling real estate broker, or their licensees. Buyer is encouraged to address concerns about the condition of the property that may not be included in this Statement. This Statement does not relieve Seller of the obligation to disclose a **material defect** that may not be addressed on this form.

A **material defect** is a problem with a residential real property or any portion of it that would have a significant adverse impact on the value of the property or that involves an unreasonable risk to people on the property. The fact that a structural element, system or subsystem is at or beyond the end of the normal useful life of such a structural element, system or subsystem is not by itself a material defect.

**Check yes, no, unknown (unk) or not applicable (N/A) for each question.** Be sure to check N/A when a question does not apply to the property. Check unknown when the question does apply to the property but you are not sure of the answer.

Seller's Initials _ME_   Date _4-21-19_         SPD Page 1 of 10         Buyer's Initials _AV_   Date _4/18/19_

Pennsylvania Association of Realtors®

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2016

## 1. SELLER'S EXPERTISE

(A) Does Seller possess expertise in contracting, engineering, architecture, environmental assessment or other areas related to the construction and conditions of the property and its improvements?

(B) Is the Seller the landlord for the property?

(C) Is Seller a real estate licensee?

**Explain any "yes" answers in Section 1:** _____

## 2. OWNERSHIP/OCCUPANCY

(A) **Occupancy**
   1. When was the property most recently occupied? _Present_
   2. Was the Seller the most recent occupant? If "no," when did the Seller most recently occupy the property? _____
   3. How many persons most recently occupied the property? _3_

(B) **Role of Individual Completing This Disclosure.** Is the individual completing this form:
   1. The owner
   2. The executor
   3. The administrator
   4. The trustee
   5. An individual holding power of attorney

(C) When was the property purchased? _1999_

(D) Are you aware of any pets having lived in the house or other structures during your ownership?

**Explain Section 2 (if needed):** _____

## 3. CONDOMINIUMS/PLANNED COMMUNITIES/OTHER HOMEOWNERS ASSOCIATIONS

(A) **Type.** Is the Property part of a(n):
   1. Condominium
   2. Homeowners association or planned community
   3. Cooperative
   4. Other type of association or community _____

(B) If "yes," how much are the fees? $_____, paid (☐ Monthly) (☐ Quarterly) (☐ Yearly)

(C) If "yes," are there any community services or systems that the association or community is responsible for supporting or maintaining? Explain: _____

(D) If "yes," provide the following information about the association:
   1. Community Name _____
   2. Contact _____
   3. Mailing Address _____
   4. Telephone Number _____

(E) How much is the capital contribution/initiation fee? $_____

*Notice to Buyer: A buyer of a resale unit in a condominium, cooperative, or planned community must receive a copy of the declaration (other than the plats and plans), the by-laws, the rules or regulations, and a certificate of resale issued by the association in the condominium, cooperative, or planned community. Buyers may be responsible for capital contributions, initiation fees or similar one-time fees in addition to regular monthly maintenance fees. The buyer will have the option of canceling the agreement with the return of all deposit monies until the certificate has been provided to the buyer and for five days thereafter or until conveyance, whichever occurs first.*

## 4. ROOF AND ATTIC

(A) **Installation**
   1. When was the roof installed? _2005 ?_
   2. Do you have documentation (invoice, work order, warranty, etc.)?

(B) **Repair**
   1. Has the roof or any portion of it been replaced or repaired during your ownership?
   2. If it has been replaced or repaired, was the existing roofing material removed?

(C) **Issues**
   1. Has the roof ever leaked during your ownership?
   2. Are you aware of any current/past problems with the roof, gutters, flashing or downspouts?

**Explain any "yes" answers in section 4, including the location and extent of any problem(s) and any repair or remediation efforts:** _____

**5. BASEMENTS AND CRAWL SPACES**

(A) **Sump Pump**

1. Does the property have a sump pit? If yes, how many?
2. Does the property have a sump pump? If yes, how many?
3. If it has a sump pump, has it ever run?
4. If it has a sump pump, is the sump pump in working order?

(B) **Water Infiltration**

1. Are you aware of any water leakage, accumulation, or dampness within the basement or crawl space?
2. Do you know of any repairs or other attempts to control any water or dampness problem in the basement or crawl space?
3. Are the downspouts or gutters connected to a public system?

**Explain any "yes" answers in this section, including the location and extent of any problem(s) and any repair or remediation efforts:**

**6. TERMITES/WOOD-DESTROYING INSECTS, DRY ROT, PESTS**

(A) **Status**

1. Are you aware of any termites/wood-destroying insects, dryrot, or pests affecting the property?
2. Are you aware of any damage caused by termites/wood-destroying insects, dryrot, or pests?

(B) **Treatment**

1. Is your property currently under contract by a licensed pest control company?
2. Are you aware of any termite/pest control reports or treatments for the property?

**Explain any "yes" answers in section 6, including the name of any service/treatment provider, if applicable:**

**7. STRUCTURAL ITEMS**

(A) Are you aware of any past or present movement, shifting, deterioration, or other problems with walls, foundations, or other structural components?

(B) Are you aware of any past or present problems with driveways, walkways, patios, or retaining walls on the property?

(C) Are you aware of any past or present water infiltration in the house or other structures, other than the roof, basement or crawl spaces?

(D) **Stucco and Exterior Synthetic Finishing Systems**

1. Is your property constructed with stucco?
2. Is your property constructed with an Exterior Insulating Finishing System (EIFS), such as Dryvit or synthetic stucco, synthetic brick or synthetic stone?
3. If "yes," when was it installed?

(E) Are you aware of any fire, storm, water or ice damage to the property?

(F) Are you aware of any defects (including stains) in flooring or floor coverings?

**Explain any "yes" answers in section 7, including the location and extent of any problem(s) and any repair or remediation efforts:**

**8. ADDITIONS/ALTERATIONS**

(A) Have any additions, structural changes, or other alterations been made to the property during your ownership? Itemize and date all additions/alterations below.

(B) Are you aware of any private or public architectural review control of the property other than zoning codes?

| Addition, structural change, or alteration | Approximate date of work | Were permits obtained? (Yes/No/Unknown) | Final inspections/ approvals obtained? (Yes/No/Unknown) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

☐ A sheet describing other additions and alterations is attached.

Seller's Initials: MEG   Date: 4-21-19   SPD Page 3 of 10   Buyer's Initials: ALX   Date: 4/73/19

*Note to Buyer: The PA Construction Code Act, 35 P.s. s7210.e1 seq (effective 2004), and local ordinances (standards for building and issuing perspectives. Buyers should check with the municipality to determine if permits and/or approvals were necessary for discretced work and if so, whether they were obtained. Where required permits were not obtained, the municipality might require the current owner to upgrade or remove changes made by the prior owner. Buyers can have the property inspected by an expert in codes compliance to determine if issues exist. Expanded title insurance policies may be available for Buyers to cover the risk of work done to the property by previous owners without a permit or approval.*

*Note to Buyer: According to the PA Stormwater Management Act, each municipality must enact a Storm Water Management Plan for drainage control and flood reduction. The municipality where the property is located may impose restrictions on impervious or semi-pervious surfaces added to the property. Buyers should contact the local office charged with overseeing the Stormwater Management Plan to determine if the prior addition of impervious or semi pervious areas, such as walkways, decks and swimming pools, might affect your ability to make future changes.*

## 9.  WATER SUPPLY

| Yes | No | Unk | N/A |
|-----|-----|-----|-----|

(A) **Source.** Is the source of your drinking water (check all that apply):

1.  Public
2.  A well on the property
3.  Community water
4.  A holding tank
5.  A cistern
6.  A spring
7.  Other _____
8.  No water service (explain) _____

(B) **Bypass Valve** (for properties with multiple sources of water)

1.  Does your water source have a bypass valve?
2.  If "yes," is the bypass valve working?

(C) **Well**

1.  Has your well ever run dry?
2.  Depth of Well _____
3.  Gallons per minute _____, measured on (date) _____
4.  Is there a well used for something other than the primary source of drinking water?
5.  If there is an unused well, is it capped?

(D) **Pumping and Treatment**

1.  If your drinking water source is not public, is the pumping system in working order? If "no," explain: _____
2.  Do you have a softener, filter, or other treatment system?
3.  Is the softener, filter, or other treatment system lease? From whom? _____

(E) **General**

1.  When was your water last tested? ____ Test results: _____
2.  Is the water system shared? With whom?

(F) **Issues**

1.  Are you aware of any leaks or other problems, past or present, relating to the water supply, pumping system, and related items?
2.  Have you ever had a problem with your water supply?

**Explain any "yes" answers in section 9, including the location and extent of any problem(s) and any repair or remediation efforts:** _____

## 10. SEWAGE SYSTEM

| Yes | No | Unk | N/A |
|-----|-----|-----|-----|

(A) **General**

1.  Is your property served by a sewage system (public, private or community)?
2.  If "no," is it due to availability or permit limitations?
3.  When was the sewage system installed (or date of connection, if public)? _____

(B) **Type** Is your property served by:

1.  Public (if "yes," continue to D through G below)
2.  Community (non-public)
3.  An individual on-lot sewage disposal system
4.  Other, explain _____

(C) **Individual On-lot Sewage Disposal System**. Is your sewage system (check all that apply):
1. Within 100 feet of a well?
2. Subject to a state-wide permit's compliance?
3. A holding tank?
4. A drainfield?
5. Supported by a backup or alternate drainfield, sandmound, etc.?
6. A cesspool?
7. Shared?
8. Other, explain: _____

(D) **Tanks and Service**
1. Are there any metal/steel septic tanks on the Property?
2. Are there any cement/concrete septic tanks on the Property?
3. Are there any fiberglass septic tanks on the Property?
4. Are there any other types of septic tanks on the Property? _____
5. Where are the septic tanks located? _____
6. How often is the on-lot sewage disposal system serviced? _____
7. When was the on-lot sewage disposal system last serviced? _____

(E) **Abandoned Individual On-lot Sewage Disposal Systems and Septic**
1. Are you aware of any abandoned septic systems or cesspools on your property?
2. Have these systems or cesspools been closed in accordance with the municipality's ordinance?

(F) **Sewage Pumps**
1. Are there any sewage pumps located on the property?
2. What type(s) of pump(s)? _____
3. Are pump(s) in working order?
4. Who is responsible for maintenance of sewage pumps? _____

(G) **Issues**
1. Is any waste water piping not connected to the septic/sewer system?
2. Are you aware of any past or present leaks, backups, or other problems relating to the sewage system and related items?

Explain any "yes" answers in section 10, including the location and extent of any problem(s) and any repair or remediation efforts: _____

## 11. PLUMBING SYSTEM

(A) **Material(s)**. Are the plumbing materials (check all that apply):
1. Copper
2. Galvanized
3. Lead
4. PVC
5. Polybutylene pipe (PB)
6. Cross-linked polyethylene (PEX)
7. Other _____

(B) Are you aware of any problems with any of your plumbing fixtures (e.g., including but not limited to: kitchen, laundry, or bathroom fixtures; wet bars; exterior faucets; etc.)?
If "yes," explain. _____

## 12. DOMESTIC WATER HEATING

(A) **Type(s)**. Is your water heating (check all that apply):
1. Electric
2. Natural gas
3. Fuel oil
4. Propane
5. Solar
6. Geothermal
7. Other
8. Is your water heating a summer-winter hook-up (integral system, hot water from the boiler, etc.)?

(B) How many water heaters are there? _____ When were they installed? _____

(C) Are you aware of any problems with any water heater or related equipment?
If "yes," explain. _____

## 13. HEATING SYSTEM

| Yes | No | Unk | N/A |
|-----|----|-----|-----|

(A) **Fuel Type(s).** Is your heating source (check all that apply)
1. Electric
2. Natural gas
3. Fuel oil
4. Propane
5. Geothermal
6. Coal
7. Wood
8. Other

(B) **System Type(s)** (check all that apply)
1. Forced hot air
2. Hot water
3. Heat pump
4. Electric baseboard
5. Steam
6. Radiant
7. Wood stove(s)  How many? _____
8. Coal stove(s)  How many? _____
9. Other: _____

(C) **Status**
1. When was your heating system(s) installed? _____
2. When was the heating system(s) last serviced? _New Boiler 2019?_
3. How many heating zones are in the property? _2_
4. Is there an additional and/or backup heating system? Explain. _____

(D) **Fireplaces**
1. Are there any fireplace(s)?  How many? _____
2. Are all fireplace(s) working?
3. Fireplace types(s) (wood, gas, electric, etc.): _____
4. Were the fireplace(s) installed by a professional contractor or manufacturer's representative?
5. Are there any chimney(s) (from a fireplace, water heater or any other heating system)?
6. How many chimney(s)? ____  When were they last cleaned? _____
7. Are the chimney(s) working? If "no," explain: _____

(E) List any areas of the house that are not heated: _____

(F) **Heating Fuel Tanks**
1. Are you aware of any heating fuel tank(s) on the property?
2. Location(s), including underground tank(s): _Front of House_
3. If you do not own the tank(s), explain: _____

**Are you aware of any problems or repairs needed regarding any item in section 13? If "yes," explain:**

## 14. AIR CONDITIONING SYSTEM

| Yes | No | Unk | N/A |
|-----|----|-----|-----|

(A) **Type(s).** Is the air conditioning (check all that apply):
1. Central air
2. Wall units
3. Window units
4. Other
5. None

(B) **Status**
1. When was the central air conditioning system installed? _____
2. When was the central air conditioning system last serviced? _____
3. How many air conditioning zones are in the property? _____

(C) List any areas of the house that are not air conditioned: _____

**Are you aware of any problems with any item in section 14? If "yes," explain:**

## 15. ELECTRICAL SYSTEM

| Yes | No | Unk | N/A |
|-----|----|-----|-----|

(A) **Type(s)**
1. Does the electrical system have fuses?
2. Does the electrical system have circuit breakers?

Seller's Initials _____ Date _4-21-19_    SPD Page 6 of 10    Buyer's Initials _____ Date _4/23/19_

(B) What is the system amperage? _____

(C) Are you aware of any knob and tube wiri

**Are you aware of any problems or repairs need**

## 16. OTHER EQUIPMENT AND APPLIANCE:

This section must be completed for each item
**that an item is listed does not mean it is inclu**
of Sale negotiated between Buyer and Seller v
purchase of the Property.

| Item | Yes | No |
|------|-----|-----|
| Electric garage door opener | ☐ | ☑ |
| Garage transmitters | ☐ | ☑ |
| Keyless entry | ☐ | ☑ |
| Smoke detectors | ☑ | ☐ |
| Carbon monoxide detectors | ☐ | ☑ |
| Security alarm system | ☐ | ☑ |
| Interior fire sprinklers | ☐ | ☑ |
| In-ground lawn sprinklers | ☐ | ☑ |
| Sprinkler automatic timer | ☐ | ☑ |
| Swimming pool | ☐ | ☑ |
| Hot tub/spa | ☐ | ☑ |
| Deck(s) | ☐ | ☑ |
| Pool/spa heater | ☐ | ☑ |
| Pool/spa cover | ☐ | ☑ |
| Whirlpool/tub | ☐ | ☑ |
| Pool/spa accessories | ☐ | ☑ |
| Refrigerator(s) | ☑ | ☐ |
| Range/oven | ☑ | ☐ |
| Microwave oven | ☑ | ☐ |
| Dishwasher | ☑ | ☐ |

**Are you aware of any problems or repairs neede**

## 17. LAND/SOILS

(A) **Property**

1. Are you aware of any fill or expansiv

2. Are you aware of any sliding, settling
   earth stability problems that have occ

3. Are you aware of sewage sludge (othe
   spread on the property, or have you re
   an adjacent property?

4. Are you aware of any existing, past or
   that might affect this property?

*Note to Buyer: The property may be
counties and mines where mine subsi
surance are available through . Depa
dence Insurance Fund, 25 Technolog
PA 15423 (800) 922-1678 (within P
vania)*

(B)  **Preferential Assessment and Development Rights**

Is the property, or a portion of it, preferentially assessed for tax purposes, or subject to limited development rights under the:

1. Farmland and Forest Land Assessment Act - 72 P.S. §5490.1 et seq. (Clean and Green Program)
2. Open Space Act - 16 P.S. §11.441 et seq.
3. Agricultural Area Security Law - 3 P.S. §901 et seq. (Development Rights)
4. Any other law program _____

*Note to Buyer: Pennsylvania has enacted the Right to Farm Act (3 P.S. § 951–957) in an effort to limit the circumstances under which agricultural operations may be subject to nuisance suits or ordinances. Buyers are encouraged to investigate whether any agricultural operations covered by the Act operate in the vicinity of the property.*

(C)  **Property Rights**

Are you aware of the transfer, sale and/or lease of any of the following property rights (by you or a previous owner of the property):

1. Timber
2. Coal
3. Oil
4. Natural gas
5. Other minerals or rights (such as farming rights, hunting rights, quarrying rights) Explain.

_____

*Note to Buyer: Before entering into an agreement of sale, Buyer can investigate the status of these rights by, among other means, engaging legal counsel, obtaining a title examination of unlimited years and searching the official records in the county Office of the Recorder of Deeds, and elsewhere. Buyer is also advised to investigate the terms of any existing leases, as Buyer may be subject to terms of those leases.*

**Explain any "yes" answers in section 17:** _____

## 18. FLOODING, DRAINAGE AND BOUNDARIES

(A)  **Flooding/Drainage**

1. Is any part of this property located in a wetlands area?
2. Is the property, or any part of it, designated a Special Flood Hazard Area (SFHA)?
3. Do you maintain flood insurance on this property?
4. Are you aware of any past or present drainage or flooding problems affecting the property?
5. Are you aware of any drainage or flooding mitigation on the property?
6. Are you aware of the presence on the property of any man-made feature that temporarily or permanently conveys or manages storm water, including any basin, pond, ditch, drain, swale, culvert, pipe or other feature?
7. If "yes," are you responsible for maintaining or repairing that feature which conveys or manages storm water for the property?

**Explain any "yes" answers in section 18(A), including dates and extent of flooding and the condition of any man-made storm water management features:** _____

(B)  **Boundaries**

1. Are you aware of any encroachments, boundary line disputes, or easements affecting the property?

*Note to Buyer: Most properties have easements running across them for utility services and other reasons. In many cases, the easements do not restrict the ordinary use of the property, and Seller may not be readily aware of them. Buyers may wish to determine the existence of easements and restrictions by examining the property and ordering an Abstract of Title or searching the records in the Office of the Recorder of Deeds for the county before entering into an agreement of sale.*

2. Do you access the property from a private road or lane?
3. If "yes," do you have a recorded right of way or maintenance agreement?
4. Are you aware of any shared or common areas (driveways, bridges, docks, walls, etc.) or maintenance agreements?

**Explain any "yes" answers in section 18(B):** _____

Seller's Initials _____ Date 4-2-19

SPD Page 8 of 10

Buyer's Initials _____ Date 4/28/19

## 19. HAZARDOUS SUBSTANCES AND ENVIRONMENTAL ISSUES

**(A) Mold and Indoor Air Quality (other than radon)**

1. Are you aware of any tests for mold, fungi, or indoor air quality in the property?
2. Other than general household cleaning, have you taken any efforts to control or remediate mold or mold-like substances in the property?

*Note to Buyer: Individuals may be affected differently, or not at all, by mold contamination. If mold contamination or indoor air quality is a concern, buyers are encouraged to engage the services of a qualified professional to do testing. Information on this issue is available from the United States Environmental Protection Agency and may be obtained by contacting IAQ INFO, P.O. Box 37133, Washington, D.C. 20013-7133 1-800-438-4318.*

**(B) Radon**

1. Are you aware of any tests for radon gas that have been performed in any buildings on the property? If "yes," list date, type, and results of all tests below:

|  | First Test | Second Test |
|---|---|---|
| Date | _____ | _____ |
| Type of Test | _____ | _____ |
| Results (picocuries/liter) | _____ | _____ |
| Name of Testing Service | _____ | _____ |

2. Are you aware of any radon removal system on the property? If "yes," list date installed and type of system, and whether it is in working order below:

| Date Installed | Type of System | Provider | Working? |
|---|---|---|---|

**(C) Lead Paint**

If property was constructed, or if construction began, before 1978, you must disclose any knowledge of, and records and reports about, lead-based paint on the property.

1. Are you aware of any lead-based paint or lead-based paint hazards on the property?
2. Are you aware of any reports or records regarding lead-based paint or lead-based paint hazards on the property?

**(D) Tanks**

1. Are you aware of any existing or removed underground tanks? Size: 275 ?
2. If "yes," have any tanks been removed during your ownership?   Heating oil 2004 ?
   Replaced in
**(E) Dumping.** Are you aware of any dumping on the property?   Heating oil

**(F) Other**

1. Are you aware of any existing hazardous substances on the property (structure or soil) such as, but not limited to, asbestos or polychlorinated biphenyls (PCBs)?
2. Have you received written notice regarding the presence of an environmental hazard or biohazard on your property or any adjacent property?
3. Are you aware of testing on the property for any other hazardous substances or environmental concerns?
4. Are you aware of any other hazardous substances or environmental concerns that might impact upon the property?

Explain any "yes" answers in section 19: _____

## 20. MISCELLANEOUS

**(A) Deeds, Restrictions and Title**

1. Are you aware of any deed restrictions that apply to the property?
2. Are you aware of any historic preservation restriction or ordinance or archeological designation associated with the property?
3. Are you aware of any reason, including a defect in title, that would prevent you from giving a warranty deed or conveying title to the property?

**(B) Financial**

1. Are you aware of any public improvement, condominium or homeowner association assessments against the property that remain unpaid or of any violations of zoning, housing, building, safety or fire ordinances or other use restriction ordinances that remain uncorrected?
2. Are you aware of any mortgage, judgment, encumbrance, lien, overdue payment on a support obligation, or other debt against this property or Seller that cannot be satisfied by the proceeds of this sale?
3. Are you aware of any insurance claims filed relating to the property?

Seller's Initials [ EC ]   Date 4-21-19      SPD Page 9 of 10      Buyer's Initials [ A √C ]   Date 4/23/19



(C)  Legal
1.  Are you aware of any violations of federal, state, or local laws or regulations relating to this property?
2.  Are you aware of any existing or threatened legal action affecting the property?

(D)  Additional Material Defects
1.  Are you aware of any material defects to the property, dwelling, or fixtures which are not disclosed elsewhere on this form?

**Note to Buyer:** A material defect is a problem with a residential real property or any portion of it that would have a significant adverse impact on the value of the property or that involves an unreasonable risk to people on the property. The fact that a structural element, system or subsystem is at or beyond the end of the normal useful life of such a structural element, system or such system is not by itself a material defect.

2.  After completing this form, if Seller becomes aware of **additional information about the property**, including through inspection reports from a buyer, the Seller must update the Seller's Property Disclosure Statement and/or attach the inspection(s). These inspection reports are for informational purposes only.

**Explain any "yes" answers in section 20:** _____
_____
_____

**21. ATTACHMENTS**
   (A)  The following are part of this Disclosure if checked:
   ☐  Seller's Property Disclosure Statement Addendum (PAR Form SDA)
   ☐  _____
   ☐  _____

The undersigned Seller represents that the information set forth in this disclosure statement is accurate and complete to the best of Seller's knowledge. Seller hereby authorizes the Listing Broker to provide this information to prospective buyers of the property and to other real estate licensees. SELLER ALONE IS RESPONSIBLE FOR THE ACCURACY OF THE INFORMATION CONTAINED IN THIS STATEMENT. Seller shall cause Buyer to be notified in writing of any information supplied on this form which is rendered inaccurate by a change in the condition of the property following completion of this form.

SELLER | *Michael E. Graham*  dotloop verified 04/28/19 10:07 PM EDT DFTU-2X0Q-LKBV-FTKU | DATE
SELLER | | DATE
SELLER | | DATE

**EXECUTOR, ADMINISTRATOR, TRUSTEE SIGNATURE BLOCK**
According to the provisions of the Real Estate Seller Disclosure Law, the undersigned executor, administrator or trustee is not required to fill out a Seller's Property Disclosure Statement. The executor, administrator or trustee, must, however, disclose any known material defect(s) of the property.

| | DATE

**RECEIPT AND ACKNOWLEDGEMENT BY BUYER**
The undersigned Buyer acknowledges receipt of this Disclosure Statement. Buyer acknowledges that this Statement is not a warranty and that, unless stated otherwise in the sales contract, Buyer is purchasing this property in its present condition. It is Buyer's responsibility to satisfy himself or herself as to the condition of the property. Buyer may request that the property be inspected, at Buyer's expense and by qualified professionals, to determine the condition of the structure or its components.

BUYER | *signature* | DATE 4/28/19
BUYER | | DATE
BUYER | | DATE

SPD Page 10 of 10

Keller Williams Real Estate-Langhorne
Buyer's Estimated Closing Cost Report courtesy of: Kelly Krimmel

Office: 2154930900
Mobile: 2679023185
kkrlm7@comcast.net

# Buyer's Estimated Closing Cost

| | | | |
|---|---|---|---|
| Buyer: | Angel L. Velazquez Jr | Settlement Date: | 5/22/2019 |
| Property: | 28 ALDER LN | Purchase Price: | $192,500.00 |
| Township / Borough: | Bristol Twp | Down Payment ( 3.500% ) : | $6,737.50 |
| County: | Bucks County, PA | Base Mortgage: | $185,762.50 |
| Loan: | FHA 203(b) - 30 year | MIP Financed: | $3,250.84 |
| Interest Rate: | 4.25% | | |

## CLOSING COSTS

| | | | |
|---|---|---|---|
| Mortgage Origination Fee (POC) : ( .000% ) : | $950.00 | Transfer Tax (1.000%): | $1,925.00 |
| Mortgage Discount Points ( .000% ): | $0.00 | Deed Recording Fee: | $60.00 |
| Appraisal: (POC) : | $375.00 | Mortgage Recording Fee: | $95.00 |
| Credit Report: | $25.00 | Notary Fee: | $35.00 |
| Mortgage Insurance: | $3,250.84 | Homeowners Insurance: (POC) | $1,000.00 |
| Documentation Preparation: | $200.00 | Home Inspection (POC) : | $500.00 |
| Underwriting: | $0.00 | Termite / Pest Inspection (POC) : | $125.00 |
| Flood Certification: | $25.00 | Radon Inspection: (POC) : | $125.00 |
| Courier: | $0.00 | Water Inspection (POC) : | $0.00 |
| Wire: | $0.00 | Septic Inspection (POC) : | $0.00 |
| Escrow Waiver: | $0.00 | Attorney Fee (POC) : | $0.00 |
| Mortgage Interest to end of month (10) days): | $216.30 | **Other Closing Costs:** | $3,865.00 |
| **Mortgage Origination Costs:** | **$5,042.14** | | |
| Title Insurance Policy (Enhanced Sale): | $1,647.44 | | |
| Policy Endorsements: | $150.00 | | |
| Survey: | $0.00 | | |
| **Title Insurance Costs:** | **$1,797.44** | | |
| **Total Closing Costs:** | | | **$10,704.58** |

## ESCROWS

| | |
|---|---|
| County Tax (6 months): | $180.94 |
| Municipal Tax (6 months): | $177.46 |
| School Tax (12 months): | $3,258.21 |
| Homeowners Insurance (2 months): | $166.67 |
| Condo / HOA Fee (0 months): | $0.00 |
| Mortgage Insurance (2 months): | $263.16 |
| **Total Escrows:** | **$4,046.44** |

## BUYER REIMBURSMENTS TO SELLER

| | |
|---|---|
| County Tax (7 months 10 days): | $222.08 |
| Municipal Tax (7 months 10 days): | $217.81 |
| School Tax (1 month 9 days): | $357.06 |
| Condo / HOA Fee (0 months 10 days): | $0.00 |
| **Total Reimbursements to Seller:** | **$796.95** |

## TRANSACTION SUMMARY

| | |
|---|---|
| Purchase Price: | $192,500.00 |
| Closing Costs: | $10,704.58 |
| Lender Escrows: | $4,046.44 |
| Reimbursements to Seller: | $796.95 |
| **Total Acquisition Costs:** | **$208,047.97** |
| Base Mortgage: | ($185,762.50) |
| MIP Financed: | ($3,250.84) |
| **Total Mortgage Amount:** | **($189,013.34)** |
| Seller Assist ( 5.000% ) : | ($9,625.00) |
| **Estimated Cash Needed to Purchase:** | **$9,409.63** |
| Earnest Deposit: | ($1,000.00) |
| Prepaid Services: | ($3,075.00) |
| **Estimated Cash Needed at Settlement:** | **$5,334.63** |

## ONGOING MONTHLY PAYMENTS

| | |
|---|---|
| Principal and Interest: | $929.83 |
| Real Estate Taxes: | $331.25 |
| Homeowners Insurance: | $83.33 |
| Mortgage Insurance: | $131.58 |
| Condo / HOA Fee: | $0.00 |
| **Estimated Monthly Payment:** | **$1,475.99** |

**Notice to Buyer:** Buyer is encouraged to obtain an owner's title insurance policy to protect the Buyer. An owner's title insurance policy is different from a lender's insurance policy, which will not protect the Buyer from claims and attacks on the title. Owner's title insurance policies come in standard and enhanced versions, the Buyer should consult with a title insurance agent about Buyer's options.

The above figures are estimated settlement costs only. These will be adjusted as of the date of the final settlement, if necessary. The estimated monthly payment may be higher or lower because of the mortgage interest rate, type of loan and/or length of term. Buyer should consult the mortgage lender regarding exact mortgage costs and terms. I (we) acknowledge receipt of a copy of this information.

Buyer: _____   Buyer: _____

Date: _____   Date: _____

Keller Williams Real Estate-Langhorne
Buyer's Estimated Closing Cost Report courtesy of **Kelly Krimmel**

Office: 2154930900
Mobile: 2679023185
kkrim7@comcast.net

# Buyer's Estimated Closing Cost

| | |
|---|---|
| Buyer: | |
| Property: | 28 ALDER LN |
| Township / Borough: | Bristol Twp |
| County: | Bucks County, PA |
| Loan: | FHA 203(b) - 30 year |
| Interest Rate: | 4.875% |

| | |
|---|---|
| Settlement Date: | 5/30/2019 |
| Purchase Price: | $192,000.00 |
| Down Payment ( 3.500% ) : | $6,720.00 |
| Base Mortgage: | $185,280.00 |
| MIP Financed: | $3,242.40 |

## CLOSING COSTS

| | |
|---|---|
| Mortgage Origination Fee (POC) : ( .000% ) : | $950.00 |
| Mortgage Discount Points ( .000% ): | $0.00 |
| Appraisal: (POC) : | $375.00 |
| Credit Report: | $25.00 |
| Mortgage Insurance: | $3,242.40 |
| Documentation Preparation: | $200.00 |
| Underwriting: | $0.00 |
| Flood Certification: | $25.00 |
| Courier: | $0.00 |
| Wire: | $0.00 |
| Escrow Waiver: | $0.00 |
| Mortgage Interest to end of month (2 days): | $49.49 |
| **Mortgage Origination Costs:** | **$4,866.89** |
| | |
| Title Insurance Policy (Enhanced Sale) | $1,647.44 |
| Survey: | $0.00 |
| **Title Insurance Costs:** | **$1,647.44** |

| | |
|---|---|
| Transfer Tax (1.000%): | $1,920.00 |
| Deed Recording Fee: | $60.00 |
| Mortgage Recording Fee: | $95.00 |
| Notary Fee: | $35.00 |
| Commission Paid by Buyer: | $325.00 |
| Homeowners Insurance: (POC) | $1,000.00 |
| Home Inspection (POC) : | $750.00 |
| Termite / Pest Inspection (POC) : | $0.00 |
| Radon Inspection: (POC) : | $0.00 |
| Water Inspection (POC) : | $0.00 |
| Septic Inspection (POC) : | $0.00 |
| Attorney Fee (POC) : | $0.00 |
| **Other Closing Costs:** | **$4,185.00** |

| | |
|---|---|
| **Total Closing Costs:** | **$10,699.33** |

## ESCROWS

| | |
|---|---|
| County Tax (6 months): | $180.94 |
| Municipal Tax (6 months): | $177.46 |
| School Tax (12 months): | $3,258.21 |
| Homeowners Insurance (2 months): | $166.67 |
| Condo / HOA Fee (0 months): | $0.00 |
| Mortgage Insurance (2 months): | $259.60 |
| **Total Escrows:** | **$4,045.76** |

## BUYER REIMBURSMENTS TO SELLER

| | |
|---|---|
| County Tax (7 months 2 days): | $214.15 |
| Municipal Tax (7 months 2 days): | $210.03 |
| School Tax (1 month 1 days): | $285.65 |
| Condo / HOA Fee (0 months 2 days): | $0.00 |
| **Total Reimbursements to Seller:** | **$709.83** |

## TRANSACTION SUMMARY

| | |
|---|---|
| Purchase Price: | $192,000.00 |
| Closing Costs: | $10,699.33 |
| Lender Escrows: | $4,045.76 |
| Reimbursements to Seller: | $709.83 |
| **Total Acquisition Costs:** | **$207,454.92** |
| Base Mortgage: | ($185,280.00) |
| MIP Financed: | ($3,242.40) |
| **Total Mortgage Amount:** | **($188,522.40)** |
| Seller Assist ( 3.000% ) : | ($5,760.00) |
| **Estimated Cash Needed to Purchase:** | **$13,172.52** |
| Earnest Deposit: | ($1,000.00) |
| Prepaid Services: | ($3,075.00) |
| **Estimated Cash Needed at Settlement:** | **$9,097.52** |

## ONGOING MONTHLY PAYMENTS

| | |
|---|---|
| Principal and Interest: | $997.68 |
| Real Estate Taxes: | $331.25 |
| Homeowners Insurance: | $83.33 |
| Mortgage Insurance: | $131.24 |
| Condo / HOA Fee: | $0.00 |
| **Estimated Monthly Payment:** | **$1,543.50** |

**Notice to Buyer:** Buyer is encouraged to obtain an owner's title insurance policy to protect the Buyer. An owner's title insurance policy is different from a lender's insurance policy, which will not protect the Buyer from claims and attacks on the title. Owner's title insurance policies come in standard and enhanced versions; the Buyer should consult with a title insurance agent about Buyer's options.

The above figures are estimated settlement costs only. These will be adjusted as of the date of the final settlement, if necessary. The estimated monthly payment may be higher or lower because of the mortgage interest rate, type of loan and/or length of term. Buyer should consult the mortgage lender regarding exact mortgage costs and terms. I (we) acknowledge receipt of a copy of this information.

Buyer: _____     Buyer: _____

Date: _____     Date: _____